## HOYT *vs.* VAN ALSTYNE.

Where an execution is issued upon a judgment recovered in an action for taking personal property without the consent of the owner, and converting and disposing of the same, such execution is not to be considered as issued on a demand for the *purchase money* of the property, so as to bring the case within the proviso of the first section of the exemption act. (*Laws of* 1842, *ch.* 157.)

By the compound word *purchase-money,* as used in that section, the legislature intended the money agreed to be paid by the purchaser, for the property.

In an action of trespass, for taking personal property, the plaintiff is bound to show title to the property taken, or a rightful possession. In showing title, proof that he was in possession claiming title, is sufficient *prima facie* evidence to enable him to maintain the action; and no one but the true owner, or one connecting himself with the true owner, in some way, is at liberty to impeach his title.

An execution only justifies the officer in taking the property of the defendant therein which is liable to be levied upon and sold as the property of such defendant. If property belonging to another person is taken, the execution will have no effect upon it; and if the property belongs to the defendant, but is exempt from execution, the officer is a trespasser in taking it.

THIS was an action commenced before a justice of the peace of Cayuga county by Hoyt, the present appellant, against Van Alstyne the respondent; in which the plaintiff complained against the defendant for unlawfully taking from his possession and converting to his own use a chestnut sorrel mare, the prop-

Hoyt *v.* Van Alstyne.

erty of the plaintiff. The answer denied each and every allegation contained in the complaint, and gave notice that the defendant would prove on the trial that he was a special deputy of the sheriff of the county of Cayuga, and was deputed by the said sheriff to execute and serve an execution issued by the clerk of the county of Cayuga, in favor of John E. Cornwell, against the plaintiff, and that by virtue of said execution he levied upon, seized and took a mare or horse which was in possession of the plaintiff, and that the taking was the same as the plaintiff complained of in this action : and that he would prove a judgment rendered by and before Calvin Carpenter, Esq. in favor of said John E. Cornwell, against the present plaintiff, for the horse or mare in question, together with the docketing of said judgment in the office of the clerk of the county of Cayuga, and would insist upon said judgment and execution as a defense to this action, and that the said mare or horse was liable to be seized and taken upon said execution. Upon the trial before the justice the defendant admitted the taking of the mare mentioned in the complaint, and the parties agreed upon the value of the mare at forty-five dollars.

The defendant then introduced in evidence the docket of Calvin Carpenter, the same justice before whom the said action was being tried, showing that an action was commenced on the 30th day of July, 1851, by said John E. Cornwell against the present plaintiff, in which the said Cornwell complained against the defendant in that action for taking a horse, buggy and harness, the property of the said Cornwell, and converting the same to his own use, and that he had refused to deliver the said horse, buggy and harness to the plaintiff, when the same was demanded of him by the plaintiff; claiming to recover $100. To which the defendant in that action answered denying the taking, &c. and setting up as a further defense, that the defendant, (the present plaintiff,) bought of one Truman Hoyt the one equal undivided half of a certain mare, and that the defendant Aaron F. Hoyt and the said Truman Hoyt thereupon became the joint owners and possessors thereof and used the same together until they sold the said mare to one David Follett, and took his prom-

issory note therefor; and the said Truman and this defendant traded said note to William Watson for the horse in question, and that at the time of the alleged taking by the defendant, he owned the one undivided half of said horse, and took the same as he had a lawful right to do, and that when he took the same horse, it was harnessed before a buggy belonging to and owned by William Watson, and with his harness, and that he returned the same buggy and harness to the said Watson, who was the owner thereof and entitled to the possession of the same. The said docket showed that the last mentioned action was adjourned from time to time, until the 25th of August 1851, when the same was tried by a jury, who found a verdict in favor of the plaintiff for forty-five dollars damages, upon which the justice rendered judgment with costs. The defendant in this action then proved that a transcript of said judgment was duly filed in the office of the clerk of the county of Cayuga and the judgment duly docketed by said clerk, and an execution issued thereon, directed to the sheriff of the county of Cayuga, and delivered to this defendant the said Van Alstyne, who was duly deputed by the said sheriff to execute the same. That Van Alstyne seized and took the mare in question by virtue of said execution, and made the following indorsement thereon, viz. " By virtue of the annexed execution I have seized and taken one chestnut mare, the property of the defendant.

STEPHEN FANCHER, sheriff, by<br>JOHN M. VAN ALSTYNE, deputy."

The defendant further proved that the mare mentioned in the proceedings in the former action was the same as the one for the taking of which this action was brought, and that in the former action the title of the mare was in question, and rested.

The plaintiff then gave evidence tending to show that he was a householder, having a family for which he provided, and that the mare in question was all the team he had, and that it was used in prosecuting the business in which he was engaged. The justice rendered judgment in favor of the plaintiff against the defendant, on the 4th of November, 1851, for $45 damages together with costs. The county court of Cayuga county re-

Hoyt *v.* Van Alstyne.

versed this judgment on appeal, and from that judgment of reversal the plaintiff appealed to this court.

*S. Giles*, for the appellant

*W. I. Cornwell*, for the respondent.

*By the Court*, WELLES, P. J. The first point made for the defendant in support of the judgment of the county court, is, that the mare in question was not a *team*, nor shown to be necessary, so as to exempt it from the execution upon which it was taken by the defendant. Evidence was given tending to show that the plaintiff was a householder having a family for which he provided, and that this mare was all the team he had, and that it was used in prosecuting the business in which he was engaged. I think enough was shown to bring him within, and to entitle him to the benefit of the first section of the ac of 1842. (*Sess. L. of* 1842, *ch.* 157.)

I cannot agree with the defendant's counsel, that the execution under which the defendant justified, was issued on a demand for the *purchase money* of this or any other property, so as to bring the case within the proviso of the section referred to. The judgment upon which the execution issued was recovered in an action against the present plaintiff, for taking the mare without the consent of the owner, John E. Cornwell, and against his will, and converting and disposing of the same to his own use. To bring the case within the proviso, the execution must have been issued for the purchase money of property exempt by law from execution. It would be a strained and unauthorized interpretation of the word *purchase* as used in the act, to construe it in the sense contended for, which never was applied to it, except when used to express a mode of acquiring title to real estate, or to the crown. (1 *Bl. Com.* 215. 2 *Id.* 241. *Id.* 201. *Burrill's Law Dict.* 842. 4 *Kent's Com.* 372, 3. 2 *Coke. Litt.* 184, *Thomas' ed.* 150.) It is defined in all these authorities as including, in its most extensive sense, all and every mode by which a man acquires title

to *real estate* by his own act or agreement, and as contradistinguished from title by descent, or operation of law. It is a misapplication of the term, to use it in that broad sense, in reference to personal property. Although thus comprehensive in its signification as sometimes applied to title to or possession of lands, it does not include a possession acquired by force or wrong; for Lord Coke says, in the place to which I have referred, "so, I take it, a purchase is to be taken, when one cometh to lands by conveyance or title; and that disseisins, abatements, intrusions and such like estates gained by wrong, are not said in law to be purchases, but oppressions and injuries."

The definition of the word "purchase," in common usage as a verb, as appears by Dr. Webster, is "to buy; to obtain property by paying an equivalent in money; it differs from barter, only in the circumstance, that in purchasing, the price or equivalent given or secured, is money;" &c. (*Web. fol. Dict., Purchase.*)

It was in this sense, I have no doubt, it was intended to be used in the statute under consideration. By the compound word "purchase-money" the legislature intended the money agreed to be paid by the purchaser, for the property.

The only remaining ground for reversing the judgment of the justice, as claimed by the defendant's counsel, is that the plaintiff had no title to the property in question, and that his possession was shown to have been tortious, which conferred no title, and did not change the right of property. The defendant's answer to the complaint was, first, a denial of each and every allegation contained in the complaint, and second, a justication as a special deputy of the sheriff, under the execution. Aside from the matter set up as a justification, the fact of defect or entire absence of title in the plaintiff, would be no defense to the defendant. In an action of trespass for taking personal property, the plaintiff is bound to show title to the property taken, or a rightful possession. In showing title, proof that he was in possession claiming title, is sufficient *prima facie* evidence, to enable him to maintain the action; and no one but the true owner, or one connecting himself with the true owner in some way, is at liberty to impeach his title. Aside from the protection which

Hoyt v. Van Alstyne.

the execution afforded, the defendant stands as a mere stranger and intruder; and it might work great injustice to allow him to assail the title of the plaintiff to goods which he had tortiously taken, without right or justification. (*Duncan* v. *Spear*, 11 *Wend.* 54, *and note.*)

The only remaining question is whether the execution in this case was a protection to the defendant. The execution was against the property of the plaintiff liable to be taken in execution; and the defendant's return stated that by virtue of the execution he had seized and taken one chesnut mare, the property of the defendant, (the present plaintiff.) It clearly, as it seems to me, would only justify him in taking the property of the defendant therein, which was liable to be levied upon and sold as the property of such defendant. That was the extent of the authority which the execution conferred upon the present defendant. If the property belonged to John E. Cornwell, the execution could have no effect upon it. If the judgment in his favor settled the question of his title to the property taken, and he desired to obtain the possession, the law afforded him another remedy. If the horse belonged to the defendant in the execution, then the present defendant was a trespasser in taking it, for the reason, as before shown, that it was exempt by law from levy and sale. If it did not so belong to him, the execution had no effect upon it. In any aspect in which I have been able to view the question, I am forced to the conclusion that the present defendant was a trespasser in taking the property, and consequently that there was no error in the judgment before the justice. For the foregoing reasons I think the judgment of the county court should be reversed, and that of the justice affirmed.

Ordered accordingly.

[MONROE GENERAL TERM, September 5, 1853. *Welles, Selden* and *T. R. Strong*, Justices.]