EDWARD C. WILCOX, Respondent, *v.* WILLIAM HAWLEY and ABRAM H. CUYLER, Appellants.

Where there have been two trials of a cause in the Supreme Court, the judgment record upon the second trial should not embrace the case made upon the first.

An appeal from a judgment entered after a second trial brings up for review only the judgment appealed from. If the record transmitted to this court contains, in addition to the case and exceptions made upon the second trial, the case made upon the first trial, on a motion to set aside a nonsuit, the latter proceedings may, and properly should, be stricken out on motion.

This court only reviews the questions of law presented by the exceptions stated and taken in the case. If the case contains no exceptions, it presents no question for review in this court.

The "team" which the exemption law exempts from sale on execution, when owned by any person being a householder, or having a family for which he provides, to the value of not exceeding $250, includes any team which a householder or head of a family may or can use in and about the business of providing for such family.

A team may be composed of one or more animals; and whatever number may compose it, if within the limit as to value fixed by statute, it will be exempt.

It is sufficient for a party claiming the exemption of his horse from sale on execution, to show that the horse constitutes his team; that he is a householder; and that his household furniture, workman's tools and team do not, in the aggregate, exceed in value the sum of $250. Upon these facts being established, he is entitled to the exemption specified in the statute.

To meet the objection urged, that a team must necessarily consist of two horses, it is proper to ask the owner of the property claimed as exempt, whether one horse can be used alone.

The exemption provided by the statute is not exclusively for the benefit of the owner of the property. It is intended mainly for the benefit of the family for which he provides.

Whether the debtor has more or less property, beyond the amount limited by the statute, is wholly immaterial in determining whether a team is necessary to him.

Hence, evidence to show that the party claiming his horse to be exempt, as being his "team," had, shortly before the same was levied on, owned two other horses, worth $200, and had other property, which he had disposed of, and transferred the avails to his wife, which she held at the time of the levy, is improper, and should be excluded.

APPEAL from a judgment entered on an order of the General Term of the Supreme Court, in the Seventh District, denying a new trial upon a case containing exceptions.

The action was brought to recover the value of a certain horse of the plaintiff, which he claimed as exempt property. The defendants, by their answers, first denied the complaint, secondly, justified the taking under a judgment and execution against the plaintiff. The action was first tried at the Wayne county circuit, on the 22d of April, 1857, and the plaintiff nonsuited. The General Term set aside the nonsuit and ordered a new trial. The action was tried a second time at a Circuit Court in Wayne county, on the 5th of May, 1859, at which time the plaintiff had a verdict for the value of the horse in question, viz: $144.34. The circuit judge allowed an order giving time to the defendants to make a case, the same to be heard in the first instance at General Term. The defendants made a case, containing exceptions to the rulings of his honor, the circuit judge, as to the admission and rejection of certain evidence on the trial; upon which the General Term, in December, 1859, denied a new trial. The plaintiff entered judgment in his favor against defendants, on the 27th of December, 1859, for $144.34 damages, and $328.96 costs and disbursements; from which the defendants appealed to this court.

Upon the trial, the taking and value of the horse were admitted, and the judgment and execution were also admitted. The only question tried was whether the horse was exempt. Upon that issue the following facts are established by the evidence, viz: That the levy was on the 29th day of January, 1857, and the sale on the 7th of February, 1857; that at the time of the levy and sale, the plaintiff was a householder, having a family for which he provided; that this was the only horse plaintiff then had; that he used this horse as a team, to support his family; that he had a one-horse lumber-wagon, and sleigh and harness, which he used with the horse. He used the horse alone sometimes, and sometimes with another horse; that at the time of the levy and sale, the plaintiff resided in the village of Red Creek, on a piece of land of about two and a half acres; he moved into Red Creek the latter part of December, 1856, some three weeks before the levy; before that he occupied

and cultivated about thirty-nine acres of land, which he had to leave owing to the foreclosure of a mortgage on the premises; that at the time of the levy and sale, the plaintiff had leased a small piece of land to cultivate; that after plaintiff moved to Red Creek, and during the winter, and before it was time to commence work upon the land he occupied and had leased, he used his horse in drawing wood for his neighbors, and in doing what teaming he could find to do; that the plaintiff's only business or means for supporting his family, was using this horse in cultivating land and doing team work; that at the time of the taking, the plaintiff had no other property not exempt; and his whole property, except the horse, including household furniture and farming tools, did not exceed in value $65; that the plaintiff forbade the levy and sale, and claimed on both occasions that the horse was exempt property. The following exceptions were taken:

*First.* Question — State if one horse can be used alone? To this question the defendants' counsel objected, upon the ground that the question was improper. The court overruled the objection, and the defendants excepted. The witness answered: "He can."

*Second.* On the cross-examination of the plaintiff's witness, Horace B. Chapman, "the defendants offered to show that shortly before the horse was taken, the plaintiff in the month of December, 1856, or in January, 1857, owned two other horses worth two hundred dollars, and had other property which he had disposed of; that the avails he had transferred to his wife, and she held those avails when defendants took this horse." The plaintiff's counsel objected to the proof offered, and the court sustained the objection. The defendants excepted to the ruling.

*Third.* The plaintiff's counsel put the following question to the plaintiff: "Had you any other business except in connection with this horse, if so, what was it?" The defendants' counsel objected to the question as leading improper and incompetent. The court overruled the objection, and the defendant excepted. The witness answered: "I had no

other business to obtain a livelihood, except by the use of this horse."

*Fourth.* The plaintiff's counsel then put to the plaintiff this question: "State if you had any arrangement made for the use of this horse in the future, and what use you intended to put him to in the future?" The defendants' counsel objected to the question, on the ground that he must be confined to what use the horse was put to at the time he was taken; that the arrangements made for the future and the anticipated use of the horse, and the intention of the plaintiff in regard to his future use, were improper, and the evidence was incompetent. The court overruled the objection, and the defendants excepted. The witness answered: "I had made arrangements to draw wood for Gardner; to cultivate land. I intended to plow a piece, and plant to corn and sow buckwheat; the spring is the proper season to break up land."

*George H. Arnold,* for the plaintiff, respondent.

*Jacob B. Decker,* for the defendants, appellants.

DAVIES, J.    This action is brought by the plaintiff against the defendants to recover the value of a horse taken by the defendants in an execution upon a judgment against him. The plaintiff claimed that the horse was exempt under the act of 1842, he being a householder, and the horse forming his team, and the whole amount of his personal property being within the sum mentioned in that action. A verdict was rendered for the plaintiff for the sum of $145.34, and the judgment entered thereon was affirmed at General Term. The value of the horse, and the judgment and execution, were admitted upon the trial, and the only question litigated was whether or not the horse was exempt under the act. Two trials have been had on this action. Upon the first trial the plaintiff was nonsuited. Upon a case made, the General Term of the Supreme Court set aside the nonsuit, and ordered a new trial. Upon the second trial, a verdict

was rendered for the plaintiff, and exceptions taken by the defendants to several rulings of the judge at the trial, in reference to the admission of evidence which was directed to be heard in the first instance at the General Term. That court overruled the exceptions and gave judgment for the plaintiff, and from that judgment the defendants appealed to this court.

The record contains, in addition to the case and exceptions made upon the second trial, the case made upon the first trial, when the plaintiff was nonsuited. This was improperly incorporated into the judgment record, and should not have been transmitted to this court. The order granting a new trial, made in the first instance, was not appealed from by either party, but was acquiesced in by both, and the present notice of appeal does not indicate that the defendants desired to have it reviewed here. Whether the Supreme Court properly or not granted the new trial, is not a question before this court. It is not an intermediate order involving the merits and necessarily affecting the judgment, contemplated by the first subdivision of the eleventh section of the Code. This court only reviews the questions of law presented by the exceptions stated and taken in the case. (*Oldfield* v. *N. Y. & Harlem R. R. Co.*, 14 N. Y., 321; *Dain* v. *Wyckoff*, 18 N. Y., 47.) The case made upon the first trial was made by the plaintiff, and contained no exceptions, and, therefore, presented no question for review in this court. (*Magee* v. *Baker*, 14 N. Y., 435.) The appeal from the judgment entered in this case brings up for review only the judgment appealed from, and the case made on the motion to set aside the nonsuit on the first trial might, and properly should have been, stricken out on motion. (*Smith* v. *Grant*, 15 N. Y., 590.) We could not proceed to review the order made for the new trial upon the facts contained in the case in the present record, as it may well have been granted for some reason *dehors* that record. Both parties acquiesced in the order and went down to the new trial, and upon this appeal we only review the proceedings had upon that trial, and the propriety of the judgment entered thereon.

In the view we take of the law, upon the facts as presented upon that trial, the plaintiff was entitled to recover. This brings us to an examination of the matters arising on the second trial and the exceptions there taken.

It is provided by the act of 1842 (3 R. S. 5th ed. p. 64?, § 23), as amended, by Laws of 1859, chap. 134, p. 343, that, in addition to the articles then exempt from sale on execution, there shall be thereafter exempted, " necessary household furniture, and working tools and team, owned by any person being a householder, or having a family for which he provides, to the value of, not exceeding, two hundred and fifty dollars, and in addition thereto, there shall also be exempted from such levy and sale, the necessary food for said team for a period not exceeding ninety days." On the trial the plaintiff gave evidence tending to show that he was a householder and had a family for which he provided, and that the household furniture and team, owned and possessed by him, exempted by the act of 1842, did not exceed in value the sum of two hundred and fifty dollars, and the verdict of the jury in his favor, must be deemed to have established these facts. They being established, the legislature have declared that such team was necessary to such householder, a person having a family to provide for, as much as his working tools. The word necessary, as used in the statute, applies to the household furniture, and qualifies the extent of that furniture exempted. There was no motion for a nonsuit, or exception to the judge's charge, or any request made to charge on the part of the defendants. We therefore assume that the case was properly submitted to the jury, and their verdict on such question is final and conclusive, and cannot be disturbed, if there was no error in the admission or rejection of evidence. Judge WELLES, in the case of *Hoyt* v. *Van Alstyne*, (15 Barb. 568), took the correct view of the statute, when he said that evidence having been given, tending to show that the plaintiff was a householder, having a family for which he provided, and that his mare was all the team he had, and that it was used in the prosecution of the business in which

he was engaged, this was all that it was necessary for the plaintiff to show to bring him within the statute, and to entitle him to its benefits. Even if it was required of the plaintiff to show that the team was necessary to the support of his family, or in the prosecution of his accustomed business, we should assume on this verdict of the jury, that they so found. If essential to be established, it was a question of fact for the jury, and we assume they resolved it favorably to the plaintiff.

It is now urged on the part of the defendants that one horse does not constitute a team, and that therefore the plaintiff's horse does not come within the letter or spirit of the statute. It is a sufficient answer to this objection, that it does not appear to have been taken or urged at the trial. But there is no force in the objection. The current of decision, in this State, is uniformly hostile to such a construction. The object and intent of these enactments by the legislature, were correctly stated in the opinion in *Kneetle* v. *Newcomb* (22 N. Y., 249.) It was there said by DENIO, Ch. J., that these exemption laws apply only to householders who have families, for which they provide. It is a fair inference from this feature that one object of the Legislature was to promote the comfort of families and protect them against the improvidence of the head. This was so considered by the Supreme Court in *Woodward* v. *Murray* (18 Johns., 400.) "I think it clear," said Judge PLATT, "that the legislature meant to confer this privilege on each of those little primary communities called families." Again: "It was designed as a protection for poor and destitute families, and the forlorn and destitute condition of his family, in the absence of the husband and father, gave them a peculiar claim to the benefit of the statute." Judge DENIO further observes, "that some articles are now exempt which do not enter into the common use of the family as such, but it was supposed that the protection of the team and the implements of a man's trade, would be likely to enable him to keep his family together and to preserve the domestic establishment from want and dispersion." Keeping in view this humane

design of the legislature, in what sense are we to construe the word "team" as thus used in the statute? We are to bear in mind that the total exemption of household furniture, working tools and implements of trade cannot, in the aggregate, exceed the sum of two hundred and fifty dollars. If, therefore, we hold that the word "team" as used in this statute, means two or more horses, or two or more oxen, it must be seen that one team, if composed of but two animals, must nearly, if not quite, exhaust the limit of exemption, and if more than two, then it must be wholly exhausted, unless the animals were of very inferior quality or value, and nothing would be left, within this limit, for exempted household furniture and working tools. It is apparent, from these considerations, that the "team" in the mind of the legislature was not of the character thus indicated, but any team which a householder, a head of a family, might or could use in and about the business of providing for such family, whether the number of animals composing the team consisted of one, two, three, four or. more. A team may be formed with either of these numbers, and whichever may compose it, if within the purview of the statute, and the limit as to value fixed by it, it will be exempt. This was the view taken by the Superior Court of New York in *Harthouse* v. *Rikers* (1 Duer, 606), where the question arose, whether a cartman's horse, used in his dray or cart, was exempt under this statute.

It is familiar to daily observation that carts there are drawn by one, two, three and four horses, but more frequently by the former number. BOSWORTH, J., pertinently observed, that however inartificial the expression may be, yet the phrase, "a one-horse team," is often used, and expresses a clear idea to the common mind. Unless the word "team," as used in the act of 1842, includes that, then a single horse, harness and cart would not be exempt, though used together by a householder as a team to do team work. He says: "I think a team, within the meaning of that act, means horses or oxen harnessed to a vehicle, and includes the three, and that though there be but a horse, harness and cart, instead. of two

horses, harness and a wagon, they are exempt from execution if of less value than $250, and are necessary for the owner's support, he being a householder, or having a family for which he provides. Under a contrary construction, the act, so far as it exempts a team, would have, practically, no application to this city. The 'team' of a carman would not be a team within the meaning of the act." And such a construction would render the act in this respect almost a nullity, as those most generally claiming the exemption secured by the act, have a team consisting of only one animal. Those mainly for whose benefit the act was intended would be thus wholly excluded from its benign provisions. Such is not the construction this provision has received in our courts, as the authorities show. (*Wheeler* v. *Cropsey*, 5 How. Pr., 288; *Hoyt* v. *Van Alstyne*, *supra*; *Radcliff* v. *Wood*, 25 Barb., 52; *Lockwood* v. *Younglove*, 28 Barb., 505.) In the case last cited, Johnson, J., said: " It is claimed that the horse in question was not and could not be a team. But it has been so repeatedly decided in this court that a single horse is a team within the meaning of the statute, when it is kept and used as such, that the question must be regarded as settled."

The plaintiff sought to establish, on the trial, that the horse taken by the defendants was necessary to him in procuring the means of living, and for the support of his family. Had you any other business except in connection with this horse? and if so, what was it?" This question was objected to by the defendants, and he answered, " I had no other business to obtain a livelihood except from the use of this horse." He was then asked, " State if you had any arrangements made for the use of this horse in the future, and what use you intended to put him to in the future?" This question was objected to by the defendants' counsel, and admitted, and exception taken.

In the view of the law we take, this inquiry was wholly immaterial and unnecessary. It was sufficient for the plaintiff to show that this horse constituted his team; that he was a householder, and that his household furniture, workman's

tools and team did not, in the aggregate, exceed in value the sum of $250. Upon these facts being established, he was entitled to the exemption provided for in the statute. He had shown that this horse was used by him as a means of obtaining a livelihood, and that he had no other means for that purpose, and the inquiry as to the arrangements for the use of the horse in the future was wholly immaterial. Its admission could work no injury to the defendants, and the answer was equally innoxious. To meet the objection urged, that a team must necessarily consist of two horses, the question put to the plaintiff, and objected to by the defendants, namely, "state if one horse can be used alone," was manifestly proper. The answer rebutted the theory of the defendants, that a team could only be composed of two or more horses. It only developed a fact patent to all observers, and which might have been assumed if it had not been proved. The proof of the fact was unobjectionable. The defendants offered to show by a witness, that shortly before the horse was taken, the plaintiff, in the months of December, 1856, and January, 1857, owned two other horses worth $200, and had other property which he had disposed of; that he had transferred the avails thereof to his wife, and that she held these avails when the defendants took the horse. This evidence was excluded by the judge, and the defendants excepted. This offer shows a very imperfect appreciation of the intent and object of the statute. The exemption provided for by it, is not exclusively for the benefit of the owner of the team. It is mainly that the family for which he provides may not be stripped of all means of support, and cast as paupers on the community. It was not to be withheld from those who had committed crimes or frauds, or from those who had participated therein. Neither did the statute contemplate that those only should participate in its benefits who had previously owned property beyond the limit fixed by it. The amount of the exemption was fixed. Property to the value named was withdrawn, for reasons deemed wise by the legislature, from the operation of execution creditors. Whether the debtor had more or less beyond that, was and is wholly

immaterial. The court, in *Wheeler* v. *Cropsey* (*supra*), gave a correct exposition of the statute in this respect. They say: "In determining whether the team was necessary, it is entirely immaterial whether the debtor had or had not other ample means to pay the debt. If the fact that he had money enough to pay the debt is to control this question, then a teamster's horses and a mechanic's working tools are not to be exempt if the owner has money enough in his pocket to pay the judgment. This cannot be the test. We think the team of every teamster, and of every other man, when it is necessary to his use, is exempt, although the owner may be worth thousands of dollars, in money or in other property. The exemption is not made in the statute to depend on the pecuniary ability of the debtor. When the debtor has money or other property, the law has provided ample remedies for collection, without resorting to exempted property for the satisfaction of the debt." The proof offered was, therefore, properly excluded. No other question is presented in the record, and the judgment appealed from must be affirmed.

Hogeboom, J. In this case there was no motion for a nonsuit. We must hence assume that there was *prima facie* evidence sufficient to carry the case to the jury. There were no exceptions to the charge of the court, and but four exceptions to the admission or rejection of evidence, which may be briefly disposed of.

1. It was proper for the plaintiff to show by men acquainted with the fact that one horse could be used alone, and it has been repeatedly and properly held, under a liberal interpretation of this remedial statute, that one horse may constitute a team.

2. The defendants' offer to show that shortly prior to the levy, the plaintiff owned two other valuable horses, and had other property, which he had disposed of, and transferred the avails to his wife, which she held at the time of the levy, was properly overruled.

(1). The object of the offered testimony was not distinctly stated, though it may be inferred it was to show fraud. The

fraudulent disposition of other property would not necessarily import a fraudulent claim of exemption, in regard to this property; and the connection between the two, and the inference to be drawn from the supposed fraud, should have been brought to the notice of the court.

(2). The question of exemption is one, of *fact*, depending upon the necessity of the horse to the party claiming the exemption, and not of *fraud* towards creditors in so arranging the residue of his property as to require such exemption. If it was designed to show the pretense of exemption was fraudulent and a sham, such point should have been stated. The evidence was not directly calculated to show it, and it may well be doubted whether the necessity for the exemption or the contrary could be pertinently illustrated by evidence of this description. I think it was too remote to be admissible, at least without a direct offer of its object and intent. In · addition to this, the defendants had the benefit of the inference which could be drawn from the plaintiff's disposition of other property, by evidence of such disposition, elsewhere admitted without objection.

3. The third objection was to the question whether the plaintiff had any other business except in connection with this horse, a question directly calculated to show the necessity of the horse to the plaintiff in his business, and thus its exemption from sale and levy under execution.

4. The fourth objection raises perhaps the only serious question in the case. The plaintiff was asked whether he had made any arrangement for the use of the horse in future, and what use he intended to put him to. This was objected to by the defendants, the objection overruled, and an exception taken. Taken in connection with the context I do not think the question was improper. He had just been asked his actual and present business, and it was not improper to show that the necessity for the use of the horse would continue; that it was not a mere temporary, but a permanent or continued use of the horse which the plaintiff required; that it was not a mere fictitious expedient to which the plaintiff resorted, but a *bona fide* and substantial use of the horse

which he required and had in contemplation. Regarded, therefore, as designed to show perfected arrangements and matured intentions in reference to the use of the horse, and to strengthen the impression of the necessity of the horse to the plaintiff's business, and to rebut any idea of bad faith, I do not think the testimony was objectionable.

These present all the exceptions taken at the trial, and are the whole case. I see no reason for disturbing the judgment of the Supreme Court, and am of opinion it should be affirmed.

Judgment affirmed.