## MARIA RAYNOR and others *vs.* CHRISTOPHER TIMERSON.

In an action of ejectment, the real question in dispute, to be tried between the parties was, whether R., the plaintiffs' father had not himself conveyed the land in question to the defendant. And this depended altogether upon the true starting point mentioned in the deed. The description commenced thus: "Beginning at *the northeast corner* of lands owned by the party of the first part, *and* by the *line fence,* and running thence south," &c. In point of fact the two objects named, to indicate the one point were not together, but on the contrary were several chains apart, and R. at the time of executing and delivering the deed to the defendant, had never occupied, or claimed to own, the land beyond the line fence, and did not know, or claim, that the deed under which he held carried his premises beyond the line fence mentioned. *Held* that upon this state of facts, the fence, being a visible, tangible object, must be held to be the true starting point.

The general rule is that courses and distances must yield to natural or artificial monuments or objects. This is upon the legal presumption that all grants and conveyances are made with reference to an actual view of the premises by the parties thereto.

A false or mistaken particular may be rejected, when there are definite and certain particulars, sufficient to locate the grant. But, *prima facie,* a fixed visible monument can never be rejected as false or mistaken, in favor of mere course and distance, as the starting point, where there is nothing else in the terms of the grant to control and override the fixed and visible call.

A defendant, under a general denial, can, in an action of ejectment, show title out of the plaintiff at the time of the comencement of the action.

Showing title in the plaintiff's ancestor, during his lifetime, is enough to raise the presumption that the title continued in him until his death, and that the plaintiffs, as his heirs at law, took the same by inheritance.

But this is a presumption, only, and by no means conclusive. It may be rebutted by proof of a conveyance by the ancestor, before his death, and before the commencement of the action.

Evidence showing that the land in controversy had been cleared and cultivated for over twenty years before the commencement of the action, and that during all that time it had been in the exclusive possession of the defendant and those under whom he derived title, is not admissible to establish a title by adverse possession, unless it has been pleaded for that purpose.

When evidence is competent for one purpose and not for another, it should be admitted, to establish the fact which it is competent to prove, and its operation restricted to that.

EJECTMENT, brought by the plaintiffs as heirs of John M. Raynor, deceased, to recover the possession of six acres of land. The only defense set up in the answer was

as follows : "The defendant answers the plaintiffs' complaint in this action, and denies the same, and each and every allegation therein." The cause was tried at the Cayuga circuit in January, 1865, before Justice WELLES and a jury ; and on the trial the plaintiffs proved title in John M. Raynor, beyond dispute, and that said Raynor died in August, 1863, leaving the plaintiffs, his only children and heirs at law.

The plaintiffs having rested, the defendant, to maintain the issue on his part, read in evidence the following deeds :

1. Baltus Lingenfelter and wife to Oliver Blanchard, dated March 20, 1829, conveying certain premises therein described.

2. Oliver Blanchard and wife to Charles Furman, dated April 24, 1852, conveying same as above.

3. Charles Furman and wife to Edward Duggan, dated May 17, 1852, conveying same as above.

4. Edward Duggan and wife to Christopher Timerson, dated April 1, 1853, conveying same as above.

5. John M. Raynor and wife to Christopher Timerson, dated April 30, 1857, conveying the following described premises : " That certain piece or parcel of land situate and being on lot No. 5 in the town of Victory, county of Cayuga and state of New York, bounded as follows.: Beginning at the northeast corner of lands owned by the party of the first part, and by the line fence running from thence south along the west line of land owned by the party of the second part ten chains to the southeast corner of John M. Raynor's land and to land owned by Mathew P. Campbell ; thence west nine chains and along the north line of Mathew P. Campbell ; thence north ten chains to the lands owned by the party of the second part ; thence east nine chains and along the south line of lands owned by the party of the second part to the place of beginning ; containing nine acres of land and no more."

The defendant offered to show that the line fence mentioned in the deed from Raynor to Timerson was the line fence between them, and ran north and south. Also that

that fence was west from the defendant's southwest corner sixteen chains and fifty-nine links; that the same fence had been there over twenty-five years. Also that the land on the east side thereof, had been and was cleared up for over twenty-three years before suit brought. Also that the defendant, and those under whom he derives his title, had been during twenty-five years, in the exlusive possession thereof, under claim of title, and that the fee of the land is in the defendant by such holding, and by virtue of the paper title, already in proof. And further, the defendant offered the above proof to show that the plaintiffs were not the owners of the land in question, and that the defendant was the owner thereof. To each and all of which said offers the plaintiffs objected, upon the grounds, 1st. That said evidence was immaterial, under the pleadings; and, 2d. Because no statute of limitations, whatever, had been or was set up by the answer in this action. And said objections were sustained, and to each of which said ruling and decision the defendant excepted. The court here ruled and decided that the deed from Raynor to Timerson, commenced at a point twenty-four chains and fifty-nine links from the west line of the lot, and not from the fence. To which said ruling and decision the defendant excepted. Jacob Timerson was then sworn as a witness on the part of the defendant. The defendant offered to show by this witness, that Raynor and the defendant built a line fence on their said premises, and divided it in equal proportions, in the spring of 1854. That preparatory to building it, Raynor sent for one Almer Blanchard to come and find the old line and stake it out, so that the said parties would know where to build the line fence. That he, Blanchard, did come and stake it out, and the fence was built upon that line. That it was located in the same place that the old fence was, which had been there for over twenty years previous. To which offer the plaintiffs objected, upon the grounds, 1st. That said evidence was immaterial under the pleadings; and, 2d. Because no statute of limitation whatever, had been or was set

up by the answer in this action; and which said objection was sustained by the court; and to which ruling and decision the defendant then and there duly excepted. The defendant further offered to show, by said witness, that said fence, so built by said Raynor and Timerson, in the spring of 1854, was the fence mentioned and referred to in the deed from Raynor to Timerson; also that prior to the conveyance, by Raynor to Timerson, Raynor sent for one John W. Sawyer, who came and ran out the line at Raynor's request, and did start from that fence and ran west to certain rails which Raynor had placed down on his land for the line north and southwest line, and which was in plain sight of his house. Also, that the survey of Sawyer established the west line of the land sold and conveyed by Raynor to Timerson, to be near the line of rails before mentioned, and that after the said deed was executed, Raynor and Timerson built the line fence jointly, on the line of rails, as the line between them; also, that the line fence first built between Raynor and Timerson was the line fence that had been recognized by Raynor and Timerson, and all under whom they claim, for more than twenty years. To each of which offers the plaintiffs objected, upon the grounds above mentioned, which objections were sustained by the court, and to which ruling and decision the defendant duly excepted.

The court then held that the plaintiffs were entitled to recover the premises mentioned and described in the first count of said plaintiffs' complaint, and thereupon ordered the jury so to find. To which decision and order said defendant also duly excepted. Whereupon the jury, under the direction of the court, and without retiring, found their verdict, that the plaintiffs were entitled to an estate in fee in the premises described in the first count of the plaintiffs' complaint, and that the defendant unlawfully withholds the possession thereof, and they assessed the damages at $253.50.

The judge thereupon ordered the exceptions to be heard in

the first instance at general term, and all proceedings on the judgment to be stayed.

*D. Wright,* for the plaintiffs.

*Geo. Rathbone,* for the defendant.

*By the Court,* JOHNSON, J.  It is conceded by the defendant that the plaintiffs showed title to the premises in question, as the matter stood when they rested their case.  There can be no doubt that the deed to their father from Perry Cornwall, dated March 19, 1852, covers these premises, as do all the deeds in the plaintiffs' chain of title, beginning with that of Baltus Lingenfelter to Aaron Putnam, of July 13, 1824.  All these deeds describe the south line of the premises as a line 24 chains 59 links in length, and this corresponding with the other lines in the deed, from a certain and undisputed starting point, would, beyond any doubt, embrace the lands in question.

The only questions in the case arise upon the defendant's offers to show title out of the ancestor of the plaintiffs, and in himself.  He first proved a conveyance from Baltus Lingenfelter to Oliver Blanchard, dated March 20, 1829, of certain premises described therein by metes and bounds, and proved several successive conveyances of the same premises by the same description, the last being to himself from Edward Duggan, dated April 1, 1853.  It was claimed by the defendant that the premises thus conveyed would overlap the premises described in the deed from Baltus Lingenfelter to Putnam, and in those down to Raynor, the father of the plaintiffs, so as to shorten the south line of their premises, making it only 19 chains and 91 links, instead of 24 chains 59 links.  The defendant then proved a conveyance from John M. Raynor to himself, dated April 30, 1857, of nine acres of land, described by metes and bounds, which description commenced as follows : "Beginning at the north-east corner of lands

Raynor *v.* Timerson.

owned by the party of the first part, and by the line fence, and running thence south," &c. The land conveyed by this deed, the defendant claimed, was the land in question in this action. For the purpose of establishing this claim, the defendant offered to show where the line fence, mentioned in the deed as the starting point, was located, and that it was located on the line between the two farms of Raynor and the defendant, according to the line described in the defendant's deed of his premises as conveyed by Lingenfelter to Blanchard, March 20, 1829, and was the same fence which had stood there over twenty-five years as the division fence between the two farms. He also offered to prove that the land on the east side of said line fence had been cleared and cultivated for over twenty-three years before the commenement of this action, and during all that time had been in the exclusive possession of the defendant and those under whom he derived title, under the conveyance last aforesaid. This was objected to by the plaintiff upon two grounds. First, as immaterial under the pleadings; and second, because the statute of limitations had not been set up by the answer. The court sustained both objections, and refused to allow the evidence to be given. The court also ruled, as appears by the case, that the starting point was, as matter of law, at a point twenty-four chains and fifty-nine links from the west line of the plaintiffs' lot, and not from the line fence. The answer was a general denial of the allegations in the complaint, only.

The real question in dispute to be tried between the parties, in this aspect of the case, was whether Raynor, the plaintiffs' father, had not himself conveyed the six acres in question to the defendant. This depended altogether upon the true starting point mentioned and described in the deed. The parties of course intended to have but one starting point, and the deed is to be so interpreted as to name and describe but one, in fact, although two objects are named to indicate more clearly its location. But suppose it turns out as matter

of fact, which can be clearly established by evidence, that the two objects named to indicate the one point are not together, but on the contrary, are several chains apart; and that Raynor, at the time he executed and delivered the deed to the defendant, had never occupied or claimed to own the land beyond the line fence, and did not know, or claim, that his deed under which he held, carried his premises beyond the line fence mentioned. Upon such a state of facts, which of the two objects would the law hold to be the starting point given in the instrument? Most clearly, as it seems to me, the fence must be held, in such a case, to be the true starting point. It was a visible, tangible object, and if the granting party had never occupied or claimed to own beyond it, the intention of the parties, and the meaning of the instrument, would be too clear for dispute or question. This was the precise state of things the defendant sought to establish by the evidence which he offered to introduce. But the judge excluded the evidence offered, and then rejected one of the objects named to indicate the starting point from the description. This, I think, was clearly erroneous. I do not see how it can be said as matter of law, even in the absence of all evidence given or offered, that the corner of land as indicated by the number of chains and links from a given point, is more certain than a division fence standing at the time of the conveyance, especially where it does not appear that there was any survey and measurement in fact, at the time such conveyance was made, in order to get a starting point or to give a description of the land to be conveyed. The general rule certainly is, that courses and distances must yield to natural or artificial monuments or objects. This is upon the legal presumption that all grants and conveyances are made with reference to an actual view of the premises by the parties thereto. (*Wendell* v. *The People,* 8 *Wend.* 183, 190.) The cases on this subject are numerous, and all one way. A false or mistaken particular may be rejected, where there are definite and certain particulars,

Raynor *v.* Timerson.

sufficient to locate the grant. (*Loomis* v. *Jackson*, 19 *John.* 449. *Jackson* v. *Marsh*, 6 *Cowen*, 281.) But *prima facia* a fixed visible monument can never be rejected as false or mistaken, in favor of mere course and distance, as the starting point, where there is nothing else in the terms of the grant to control and override the fixed and visible call. But the evidence was excluded as immaterial under the answer. This raises the question whether a defendant under a general denial can, in an action of this description, show title out of the plaintiff at the time of the commencement of the action. That he can do so, I entertain no doubt. The defendant here was in possession, and it was for the plaintiffs to show a right of possession as against the defendant. This they undertook to do by showing title in their ancestor on the 19th of March, 1852. This was enough to raise the presumption that the title continued in him until his death, and that the plaintiffs, as his heirs at law, took the same by inheritance. But this was a presumption only, and by no means conclusive. It might be rebutted by proof of a conveyance by the ancestor before his death and before the commencement of the action.

The real question at issue was not whether the ancestor once had title and the right of possession, but whether the plaintiffs, at the commencement of the action, had such title and right. The cardinal rule on this subject is, that under the general issue or a general denial of all the allegations of the complaint, the defendant may controvert by evidence any and every fact which the plaintiff is bound to establish to make out his cause of action. (*Andrews* v. *Bond*, 16 *Barb.* 633.) He can not, under such an answer, prove a discharge of a cause of action once existing in the plaintiff against him, because that is an affirmative defense, or new matter which must be pleaded. But he may show that the plaintiff never had any such cause of action against him as is alleged in the complaint. Of course if Raynor had, in his lifetime, conveyed the premises in question to the defendant, the plaintiffs

never had any such cause of action against him, and it was wholly unnecessary to set up such conveyance in the answer. It was well settled under the former practice that a defendant, under the general issue, might show title out of the plaintiff at the commencement of the action, without even connecting himself with it in any way. (*Gillett* v. *Stanley,* 1 *Hill,* 121. *Schauber* v. *Jackson,* 2 *Wend.* 13, 48.) This proceeded upon the fundamental rule in actions of ejectment, that the plaintiff must always recover upon the strength of his own title. (*Till. Ad. on Eject.* 285, 286.) The same rule prevails in actions for the recovery of personal property or its value. The defendant may, under the general denial, show that the plaintiff was not the owner at the commencement of the action, though generally, in such case, he must connect himself with the title. (*King* v: *Orser,* 4 *Duer,* 431. *Hoyt* v. *Van Alstyne,* 15 *Barb.* 568. *Duncan* v. *Spear,* 11 *Wend.* 54. *Davis* v. *Hoppock,* 6 *Duer,* 254. *Schermerhorn* v. *Van Allen,* 18 *Barb.* 29, 31. *Amburger* v. *Marvin,* 4 *E. D. Smith,* 393. *Little* v. *Wilson, Id.* 422.)

In respect to the plaintiffs' second objection to the evidence offered, it had no pertinency whatever, if the defendant claimed title to the six acres in question, by virtue of his conveyance from Raynor of the nine acres on the 30th of April, 1857, and not by virtue of his deed from Duggan in 1853, and the conveyance by Lingenfelter to Blanchard in 1829. In that case there was no statute of limitations in question, as there was no claim to these six acres, by adverse possession, on the part of the defendant. Upon that view of the case, and under that claim of title, the evidence, as I have before shown, would be competent and material to show the true starting point given by the deed. But if it was intended to claim title to the six acres under the conveyance from Lingenfelter to Blanchard, and by adverse possession under that claim of title, it should unquestionably have been pleaded for that purpose, or it was inadmissible to establish such title. Upon that hypothesis Raynor's title, being the oldest, and

from the same source, was the true title, and the defendant's conveyance from Duggan, and those under whom he claimed, so far as the premises in question are concerned, conferred no title. The Code (§ 74) is conclusive upon this question, that such an objection can only be taken by answer. But being competent for the other purpose, it should have been admitted, and restricted to that purpose only. It could not, under the proper objection, have been allowed to raise the question of title by adverse possession, as that objection was not raised by the answer. Where evidence is competent for one purpose and not for another, it should be admitted to establish the fact which it is competent to prove, and its operation restricted to that.

There must therefore be a new trial, with costs to abide the event.

[MONROE GENERAL TERM, September 3, 1866. *Welles, E. Darwin Smith* and *Johnson*, Justices.]