## HERMAN F. INDERLIED AND OTHERS, APPELLANTS, *v.* NICHOLAS WHALEY, RESPONDENT.

*Trees — contracted for — action for conversion maintainable by one having an equitable title to the land and the right to possession — estoppel — an expression of an opinion is not enough.*

In March, 1881, Dwight F. Morss, the owner of a tract of wood-land, agreed with one Chace that the latter should peel the hemlock bark and manufacture certain of the lumber on the lot at certain prices. While this contract was in force, and in November, 1881, Morss contracted, in writing, with persons of the name of Inderlied to sell the lands, subject to Chace's rights. The contract of sale, which went into effect January 13, 1882, reserved to Morss the timber, except the hard wood, and provided that Morss or Chace should have the period of four years in which to cut and remove the timber reserved, reserving to Chace the mill, the mill-yard and a suitable space for piling lumber; and also the right to remove, after the completion of the contract, such structures as he had erected on the lands, to which contract Chace consented.

In October, 1884, Chace surrendered his contract with Morss, and also the possession of the land thereunder, to Nicholas Whaley, who occupied the premises with the consent of Morss, until April, 1886. On January 12, 1886, there was a quantity of lumber manufactured in various forms on the mill-yard, and also a quantity outside of it. About sunset, on January twelfth, the Inderlieds forbade the removal of any more lumber by Whaley, who had intended to remove all of it before midnight of January thirteenth, claiming that he had all that day in which to do so. As a result of the Inderlieds' prohibition Whaley did not remove the timber on January thirteenth, but after that date and before March 24, 1887, he removed most of it.

On April 10, 1888, the Inderlieds received a deed from the executors of Morss, who had previously died; but before this deed was given the Inderlieds brought an action against Whaley for the conversion of the timber.

*Held,* that the action could be maintained.

That the plaintiffs, by virtue of their contract with Morss, became the equitable owners of all timber not reserved.

That this gave the plaintiffs a special property sufficient to maintain the action for conversion.

That timber cut, but not removed within four years, was not excepted, and the equitable title, and the absolute right of possession thereof, passed to the plaintiffs.

That the plaintiffs were not estopped from recovering the timber because, on January twelfth, they had forbidden further removals.

That what they did amounted to no more than an expression of their opinion, that Whaley had only until sundown on January twelfth to remove the timber.

APPEAL by the plaintiffs, Herman F. Inderlied, William K. Inderlied and Edward C. Inderlied, from a judgment of the Supreme Court, entered in the office of the clerk of the county of Delaware on the 12th day of July, 1890, dismissing the complaint, with costs, after a trial by the court at the Delaware Circuit.

In March, 1881, Dwight F. Morss was the owner of about nine hundred acres of land situated in the town of Tompkins, Delaware county, N. Y. On the twenty-ninth of that month he entered into a contract in writing and under seal with one Chace, whereby Chace agreed to peel all the hemlock bark on said premises, and to deliver the same on the cars at Rock Rift station, for which Morss was to pay three dollars per ton. Chace also agreed to cut and manufacture all the hemlock, bass-wood and chestnut timber on the premises into lumber and deliver the same on the cars at the same station, for which he was to receive six dollars per thousand, and was to cut and manufacture into lumber and load on the cars at the station all the birch, ash and cherry timber thereon for seven dollars a thousand.

On November 18, 1881, while the contract between Morss and Chace was still in force, the plaintiffs, one Shufelt and Morss, entered into a written contract under seal, wherein it was recited that Morss was the owner of the premises mentioned; that he had entered into a contract with Chace for cutting the timber and peeling the bark thereon; that Chace had erected buildings on the land and was in occupation of part of it in performance of his contract; and that Morss desired to sell, and the plaintiffs to purchase, the said lands, subject to the performance by said Chace of the contract first mentioned, and to the rights of Chace in and to his erections thereon.

The contract then contained an agreement by Morss to sell, and by the plaintiffs and Shufelt to purchase, the premises described, being the 900 acres above referred to, "excepting and reserving unto the first party (Morss) all the hemlock, ash, bass-wood, cherry and chestnut timber now standing or being on the said land, and reserving also unto first party the right, either for himself or his agents, to go upon the said land and cut and peel the said timber and remove the said timber and bark therefrom, using such teams, men or machinery as may be necessary therefor, and reserving also unto said Chace the use of the buildings and erections now on said land, and of the mill-yard, and suitable space for piling logs and

timber during the carrying out of this contract with said first party, and the right also unto said Chace, at the completion of his said contract, to remove from said land all of the erections that may be on said land for the purpose of carrying out his contract with first party, including dwelling-house, sheds, barns, saw-mill and mill fixtures."

It then provided that the contract with Chace should be modified by excepting therefrom so much "as provides for the cutting and manufacture of the hard wood on said land, which said hard wood, except as above provided, it is intended to convey unto second parties (plaintiffs and Shufelt.)" It also provided that the plaintiffs and Shufelt should pay therefor $4,000, $800 of which was to be paid on the delivery of the contract and the remainder in six equal annual payments from date, with interest annually on all sums unpaid, payable at the time of each annual payment. At the time of the last payment Morss was to execute to plaintiffs and Shufelt a deed, with covenants against all acts on his part. The contract provided, in express terms, that the plaintiffs and Shufelt were to have the immediate possession of the premises, the contract, however, not to take effect or be operative unless Chace consented to modify his contract to conform to that contract and to continue his contract as modified. Then followed this provision : " It is further agreed that said first party or said Chace shall have the period of four years in which to cut and remove the timber herein reserved, at the end of which time said reservation of timber shall cease to be operative. It is also agreed that said Chace shall have the right to continue all erections on said land made by him and to enjoy the use of the mill-yard, piling ground, and garden and yard adjoining said dwelling-house, so long as he shall use the mill for saw-mill purposes, and shall then have the right to remove said erections from said land, it being expressly understood that said erections are not and shall not become fixtures on said land." Subsequently Chace agreed to modify his contract with Morss so as to make it correspond with the contract between him (Morss) and the plaintiffs and Shufelt, and agreed to carry out and continue the performance of the contract as modified.

On January 13, 1882, Chace having previously consented in writing to modify his contract with Morss to conform with the

contract between Morss and plaintiffs and Shufelt, the plaintiffs paid Morss $800, whereupon the following paper was made and signed by Morss:

"SYRACUSE, *January* 13, 1882.

"Received on contract between D. F. Morss and H. F. Inderlied & Co. the sum of eight hundred dollars, being first payment on said contract, the said Inderlieds and Shufelt, however, to pay whatever tax has been levied on the land mentioned in the contract since November 18, 1882, and the contract is this day delivered to and accepted by the parties thereto with the above understanding." To this was added the following: "The above receipt witnessed and agreed to at above date," which was signed by the plaintiffs and Shufelt.

On the trial the court, in substance, found that on January 13, 1882, when the agreement between the plaintiffs and Shufelt and Morss was finally executed and delivered, Chace was, and had for some time been, in possession of the mill, mill-yard and piling ground reserved in that contract; that, in October, 1884, Chace surrendered his contract with Morss to the defendant, who was acting for Morss, and surrendered to him the possession of the mill, mill-yard and piling ground, consented that he might use and occupy the same as he (Chace) had previously; and defendant used and occupied them to and after April 12, 1886; that, on January 12, 1886, there was a quantity of hemlock lumber, telegraph poles, railroad ties and fence posts on the mill-yard that the defendant had caused to be cut on the premises and manufactured and stored there; that at the same time there were 14,000 feet of bass-wood lumber, and 1,500 feet of hemlock logs on said premises outside of the mill-yard and piling ground; that at about four o'clock P. M., on January 12, 1886, the plaintiffs forbade the defendant and persons in his employ from removing such logs or timber as were outside of the mill-yard, or to interfere with them in any manner whatever; that the plaintiffs' forbidding the removal of the same deterred persons then employed by the defendant from continuing their work upon the premises, by reason of which the defendant was unable to remove such timber and logs to the mill-yard or piling ground, as he had intended and might have done before the end of January 13, 1886, if he had not been forbidden;

that the premises were fully paid for before April 10, 1888 (the last payment was made January 24, 1888); and on that day (April tenth), a deed of the premises was duly executed and delivered to the plaintiffs by the executors of Morss, who had died previous to that date; and that the defendant, between January 12, 1886, and March 24, 1887, removed the most of the timber and lumber mentioned as on the mill-yard and piling ground, and the 14,000 feet of bass-wood and 1,500 feet of hemlock on the premises outside.

As conclusions of law, the court, in substance, held: 1. That the defendant had a right to occupy the mill-yard and piling ground for storage, and was not liable for removing timber or lumber therefrom. 2. That by reason of the plaintiffs having forbidden the defendant from moving the timber and logs outside of the mill-yard and piling ground, and thus prevented him from completing his work within the time specified in the contract, they were estopped from recovering in this action for the removal of such logs after the time mentioned in the agreement. 3. That the plaintiffs had no title to the timber and lumber in question. 4. That the contract was executory, and the title to the premises and timber thereon and severed therefrom was in Morss, and after his decease in his executors, and such title did not become vested in the plaintiffs. 5. That the action being for the conversion of the property in question, the plaintiffs could only recover by showing title in themselves, which they failed to do. 6. That the action could not be maintained, and the complaint should be dismissed, and judgment was directed accordingly.

*Marvins & Hanford*, for the appellants.

*W. H. Johnson*, for the respondent.

Martin, J.:

This action was for trespass in removing and converting personal property consisting of lumber, telegraph poles, railroad ties and fence posts. No other cause of action was set forth in the complaint. The main controversy between the parties was whether the plaintiffs had sufficient interest in the property in question to enable them to maintain the action.

By virtue of their contract with Morss, the plaintiffs became the

equitable owners of the land described therein, together with all the timber and trees growing thereon, except so far as the same was therein reserved and excepted. (*Moore* v. *Burrows*, 34 Barb., 173; *Adams* v. *Green*, Id., 176; *Hathaway* v. *Payne*, 34 N. Y., 103.)

The exception contained in the contract reserved to Morss, his agents or Chace, only such timber as was cut and removed within four years. If any was not removed within that time, although cut, it did not fall within the exception, and the equitable title, with the absolute right of possession, passed to the plaintiffs. (*McIntyre* v. *Barnard*, 1 Sandf. Ch., 52; *Boisaubin* v. *Reed*, 2 Keyes, 323; *Kellam* v. *McKinstry*, 69 N. Y., 264; *Lacustrine Fer. Co.* v. *L. G. and Fer. Co.*, 82 id., 476.)

If it be admitted that Morss had title to the lumber and timber which had been cut and removed to the mill-yard and piling ground, it by no means follows that he had the right to remove the portion left upon other parts of the premises of which the plaintiffs had actual possession and to all of which they had an equitable title.

When Morss or those claiming or acting under him failed to remove the timber cut within the time provided, as we have seen, it passed under the contract to the plaintiffs, who thereupon acquired an equitable title to it, with a legal right to its possession, which was expressly given by the contract. Before the trial of this action the plaintiffs' equitable title had ripened into a legal title. When the action was commenced the plaintiffs, by virtue of their equitable interest and legal right to the possession of it, had, we think, such a special property in and right of possession of the lumber not removed as would enable them to maintain an action for its conversion against any person wrongfully taking the same, and even against a person holding the naked legal title in trust as security for the payment of the unpaid purchase-price of the premises, especially where, as in this case, the whole purchase-price had been tendered. (4 Am. and Eng. Encyc. of Law, 117; Moak's Underhill on Torts, 589; *Edwards* v. *Frank*, 40 Mich., 616; *Hoyt* v. *Van Alstyne*, 15 Barb., 568; *Stowell* v. *Otis*, 71 N. Y., 38; *Wheeler* v. *Lawson*, 103 id., 40, 45.) We, therefore, conclude that the court erred in holding that the plaintiffs had not sufficient title to maintain this action.

But it is contended that the plaintiffs were estopped from insisting upon their right to the timber not removed within the time men-

tioned in the contract, because the plaintiffs forbade the defendant from removing it on January 12, 1886, when the defendant had all of the thirteenth day of that month in which to remove it. While the defendant's claim as to the time within which he might remove it may be correct (*Cornell* v. *Moulton*, 3 Denio, 12), still, if so, it is difficult to discover any ground upon which the defendant's claim of estoppel can be upheld.

As to what occurred between the parties, the defendant testified : " On the 12th day of January, 1886, I remember being forbidden by the plaintiff to go on and do anything further. I was on the track where we run lumber out of the mill ; the mill was running at the time. Plaintiff wanted to know if I knew our time was out ; I told him I did not ; I supposed we had the 13th on which the contract was signed and delivered. He said : ' No, your time expires to-day.' ' Well,' I said, ' you will give us the benefit of this evening.' ' No,' he said, ' your time expires with the setting sun to-day.' I took out my watch and looked at the time ; it was four o'clock, and as soon as he left I made a memorandum of the day and hour. I done some work that evening ; cleaned the snow out of the chute. I did nothing on the 13th, as I could not get help. * * * Had I not been forbidden I think I could have got all this lumber into the mill-yard by the evening of the 13th of January ; think I had or could have got force enough to put them all on."

As to what occurred upon this occasion there is substantially no dispute. From the evidence it is manifest that the plaintiffs were of the opinion that the time in which the defendant could remove the timber, excepted or reserved in the contract, expired at sundown on January 12, 1886, and that they, in substance, so informed the defendant and refused to extend the time to remove it. In this we can find nothing sufficient to establish an estoppel against the plaintiffs. We are aware of no principle or authority which would sustain us in holding that the plaintiffs' assertion of their supposed rights at that time and in the manner stated estopped them from afterwards claiming the timber which had been cut and not removed. We do not think the judgment can be sustained upon that ground.

We are of the opinion that the learned trial judge fell into an error in holding that the plaintiffs had not sufficient property in the

lumber cut, but not removed, to enable them to maintain this action, and in holding that they were estopped from claiming such timber. For these errors we think the judgment should be reversed.

HARDIN, P. J., and MERWIN, J., concurred.

Judgment reversed and a new trial ordered, with costs to abide event.