## GRIFFIN vs. SUTHERLAND.

A person having, and providing for, a household, is a "householder," within the provisions of the revised statutes exempting certain property from sale on execution; and he does not lose the character, by temporarily ceasing to keep house, and storing his property, with a view to return to it again, and renew housekeeping. WRIGHT, J. dissented.

A party claiming an exemption of his property, under the provisions of the revised statutes, from sale on execution, must show, affirmatively, the facts which entitle his property to such exemption.

APPEAL from the Columbia county court. Griffin sued Sutherland before a justice of the peace, for the alledged wrongful taking of personal property. The defendant, who was a deputy of the sheriff of the county of Columbia, justified the taking and sale of the property under and by virtue of an execution against the plaintiff's property, issued out of the county court. The cause was tried before the justice and a jury. The jury found a verdict for the plaintiff for $47,83, and the justice rendered a judgment for that amount, with costs. The county court, on appeal, affirmed the judgment, and the defendant appealed to this court.

*John H. Reynolds*, for the appellant.

*C. H. Bramhall*, for the respondent.

PARKER, J. The question to be determined in this case is, whether the property sold by the defendant was exempt by law from execution.

The wife of the plaintiff was not living, but he had two children, for whom he provided. He had been keeping house until in the spring or early in the summer, when he ceased housekeeping, stored his furniture and went into the western part of the state, on a visit to some of his relations, taking with him the children. There was evidence tending to show that he had not finally abandoned housekeeping, but that he intended to return and resume housekeeping, and that he did in fact resume it on his return, after the sale of his property. Indeed, I think we are bound to hold that the jury, in finding for the plaintiff, in this case, settled as questions of fact, that the property was stored only temporarily, and that he intended to resume housekeeping when he should return from his visit. With these facts, therefore, in the case, we will examine the legal question whether the property was exempt from execution.

The revised statutes except certain specific articles, owned by any person, being a householder, and provide that they shall continue so exempt while the family of such person, or any of them, may be removing from one place to another. (2 *R. S.* 367.) A later act, passed in 1842, (*Laws of 1842, ch.* 157,) exempts, in addition, necessary household furniture and working tools, and team, owned by any person being a householder, or having a family for which he provides, to the value of not exceeding one hundred and fifty dollars.

If all the property sold by the defendant was covered by the act of 1842, there would be no difficulty, I think, in saying it was clearly exempt. The defendant had a family for which he provided, and his relative character, in that respect, would undergo no change because he and his children were temporarily on a visit among their relations. But most of the articles are those specified in the exemption provided by the revised statutes, and are not exempt unless the plaintiff was a "householder" at the time of the levy and sale.

What is meant by the term "householder?" It does not

mean simply a housekeeper, but also a "master or chief of a family." (*Webster's Dic.*) And the latter has been adopted and acted upon as the legal signification. In *Woodward* v. *Murray*, (18 *John.* 400,) it was held that M., though absent from the state, was to be deemed a householder while his family were removing from one house to another several miles distant, and that his property was exempt during such removal. At that time the exemption act did not, as it does now, particularly provide for the exemption of property during the removal of the family from one place of residence to another, and the question was only whether the owner was a householder during such removal. Judge Platt, in giving the opinion of the court, says that "householder" means "master of a family." He added, "To say that a family, while in the act of removal, and on the highway, may be deprived of their bed and their cow, on execution, because they did not for the time inhabit a dwelling house, would be a perversion of the statute. So long as they remain together as a family without being broken up, and incorporated into other families, the privilege remains. It was designed for the protection of poor and destitute families." The same legal construction was given to the word "householder" in *Bowne* v. *With*, (19 *Wend.* 475,) in which Bronson, J. says, "the word 'householder,' in this statute, means the head, master, or person who has the charge of, and provides for, a family."

I think these authorities are conclusive on this point. A person having, and providing for, a household, is a "householder:" and the character is not lost by a temporary ceasing of housekeeping, and storing of property, with a view to again return to it and renew housekeeping, any more than it was during the removal of the family from one place of residence to another. The plaintiff had a family under his control, which he was bound by law to support and maintain. In construing and applying this statute, we should bear in mind, as was said of it by Nelson, Ch. J., in *Carpenter* v. *Herrington*, (25 *Wend.* 370,) that it "is remedial, and should be liberally construed to effect the humane object in view." It was said by the court in *Woodward* v. *Murray*, above cited, that "the legislature meant to confer

Griffin *v.* Sutherland.

this privilege on each of these little primary communities called families." A liberal construction of this statute is also claimed in *Hall* v. *Penney*, (11 *Wend.* 44.) The exemption was made for the benefit of the family, rather than its head, the debtor. Its object concerns a question of public policy. It is to keep together the wife and children, that the latter may be trained and educated to become useful members of society: to protect them against the dangers to which they would be exposed by being scattered, at a tender age, and to secure them the means of instruction and improvement. Upon this first point, therefore, I find no reason for disturbing the verdict of the jury.

It is also alledged, for error, that there was no proof of facts sufficient to exempt the property, although it should be assumed that the owner was a householder. It undoubtedly devolved upon the plaintiff to show, affirmatively, the facts which entitled him to the exemption of the property in question. (14 *John.* 434.) There was certainly evidence before the jury on this point. It seems to have been conceded that all of the plaintiff's household property was sold. Indeed, there was proof by the witness Benton, that the only other property there, owned by the plaintiff, was a wagon on which Bulkley had a mortgage. As to some of the articles, it was material to inquire whether they were necessary, and on that point, the jury, knowing the number of children, their ages, &c., were the most competent to judge. It was a question of fact exclusively for their determination.

I think the judgments of the justice, and of the county court, were right, and ought to be affirmed.

HARRIS, J. concurred.

WRIGHT, J. dissented.

Judgment affirmed.

[ALBANY GENERAL TERM, December 6, 1852. *Parker, Wright* and *Harris,* Justices.]