### In re WILLIAMS.

(Supreme Court, Appellate Division, Second Department. June 28, 1898.)

ALLOWANCE TO WIDOW.

Code Civ. Proc. § 2713, subd. 3, allowing to the widow and children of a decedent "all necessary provisions and fuel" for 60 days after his death, is to be liberally construed; and, if the estate has not the specific articles enumerated in the statute, an allowance equivalent to the value thereof may be made for that purpose.

Appeal from surrogate's court, Kings county.

In the matter of the application of Genevieve H. Williams for an allowance out of the estate of Nelson G. Williams, deceased. From an order granting the allowance, the executors appeal. Affirmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

William J. Leitch, for appellants.

Walter R. Eaton, for respondent.

GOODRICH, P. J. Nelson G. Williams died in November, 1897, leaving a will, which, after a contest on the part of his widow, was admitted to probate by the surrogate of the county of Kings in February, 1898. The widow was not a beneficiary under the will. The testator left no minor children, nor any person, other than the widow, dependent on him for support. In April an application was made to the surrogate for an order allowing the sum of $200 out of the estate of the deceased, as a reasonable amount for her sustenance, and directing such amount to be inserted in the inventory and appraisement. The surrogate made the following decision:

"As the testator died seised of no real estate, I do not think that the law applicable to the widow's quarantine (Laws 1896, c. 547, § 184) pertains to this application. I am of the opinion, however, that under subdivision 3, § 2713, of the Code of Civil Procedure, the widow is entitled to all necessary provisions and fuel for sixty days after the death of the testator. The inventory herein should be amended accordingly; and, as the appraisers failed to set aside anything under said subdivision of said section, it will now be necessary to allow such a sum as the necessary provisions and fuel would have amounted to, which, under all the circumstances, I will fix at two hundred dollars. Let order enter accordingly."

The testator and his family lived at 100 Park Place, Brooklyn,— the premises being leased to, and not owned by, him; and he owned no real estate. His personal estate amounted to about $4,000. The widow remained in the house till the latter part of February,—a space of more than the dower quarantine allowed by section 184 of the real property law (5 Rev. St. [9th Ed.] p. 3572), which reads as follows:

"A widow may remain in the chief house of her husband forty days after his death, whether her dower is sooner assigned to her or not, without being liable to any rent for the same; and in the meantime she may have her reasonable sustenance out of the estate of her husband."

It is not necessary for us to determine whether this section relates to other proceedings than those in which matters of dower are to be adjudged.

It is interesting to observe that the doctrine of a widow's quarantine was embodied in Magna Charta, c. 7, as follows:

"A widow, after the death of her husband, shall forthwith and without difficulty have her marriage and her inheritance, and shall give nothing for her dower, her marriage, or her inheritance, which her husband and she held the day of the death of her husband, and she shall remain in the chief house of her husband for forty days after the death of her husband, within which days her dower shall be assigned to her, if it were not assigned to her before or unless that house be a castle; and if she depart from the castle, then a competent house shall be forthwith provided for her, in which she may honestly dwell, until her dower be to her assigned as aforesaid; and she shall in the meantime have her reasonable estovers of the common, moreover for her dower shall be assigned to her the third part of all the lands of her husband, which were his during his life (in vita sua, freely, during coverture) except she were endowed of less at the church door. No widow shall be distrained to marry herself while she chooses to live without an husband. Nevertheless she shall give security that she shall not marry without our approval, if she hold of us, nor without the assent of the lord, if she hold of another."

Section 2713 of the Code of Civil Procedure reads as follows:

"If a man having a family die, leaving a widow or minor child or children, the following articles shall not be deemed assets, but must be included and stated in the inventory of the estate without being appraised: * * * (3) Sheep to the number of ten, with their fleeces, and the yarn and cloth manufactured from the same; one cow, two swine, and the pork of such swine, and necessary food for such swine, sheep or cow for sixty days, and all necessary provisions and fuel for such widow, child or children for sixty days after the death of such deceased person."

I think it may be conceded that the allowance made by the learned surrogate does not come within the strict letter of the statute. In the construction of remedial statutes, we need not say, "Ita lex scripta est," and be prevented from further effort to effectuate the intended remedy. Dwarris says:

"That the words of a remedial statute are to be construed largely and beneficially, so as to suppress the mischief and advance the remedy." Dwar. St. p. 632.

And Sedgwick, in his work on Construction of Statutory and Constitutional Law, says (page 309):

"It is by no means unusual, in construing a remedial statute, it has been said, to extend the enacting words beyond their natural import and effect, in order 'to include cases within the same mischiefs.' "

Said Lord Mansfield in Atcheson v. Everitt, Cowp. 382, 391:

"In remedial cases, the construction of statutes is extended to other cases within the reason or the rule of them."

Chancellor Jones, in White v. Carpenter, 2 Paige, 217, 229, used the following language:

"My judgment must be borne down by the force and weight of authority, before I can attach to statute provisions a harsher operation or more unrelenting severity than to common-law principles, or deny to legislative enactments the liberal, benign, and equitable construction which will give to them the attributes of a nursing mother, equally with the rules and principles of the common law."

What, then, was the remedy which the statute sought to afford?

"Most of the states of the Union have made provision by statute for the temporary maintenance of the widow and family of a decedent, out of his

estate, until they receive their distributive shares, or until some other provision can be made for their support." 2 Am. & Eng. Enc. Law, 156.

The only case which I have been able to discover which in any way conflicts with the views of the learned surrogate is Baucus v. Stover, 24 Hun, 109, where the surrogate of Washington county had allowed to the widow the value of 10 sheep, with their fleeces, and 2 swine. There were no such articles in the estate, and the surrogate allowed their value. The general term held that this allowance was improperly made. This decision was reversed by the court of appeals on another point (89 N. Y. 1), and without discussion of the point herein involved. The object of what are known as "exemption statutes" is to prevent a family which has no other means of support from being thrown as paupers upon the community. Wilcox v. Hawley, 31 N. Y. 648. They demand at the hands of the court a liberal interpretation, so as to resolve all reasonably doubtful questions in favor of the beneficiary. Kapp v. Public Adm'r, 2 Bradf. Sur. 259; In re Durscheidt's Estate, 65 Hun, 136, 19 N. Y. Supp. 973. I find similar authority in a well-considered case (Strawn v. Strawn, 53 Ill. 263, 274), where, in construing a similar, but more liberal, statute, the court said:

"It cannot be supposed that the legislature, when it used the words 'necessary furniture' and 'provisions for a year,' designed to use the words in a rigid and unbending sense, to be construed in all cases without reference to the circumstances of the parties. If that were so, we should be obliged to say that many articles of furniture to be found in all comfortable houses were not absolutely indispensable, and that the provisions for a year might be reduced to a certain amount of bacon and corn meal." And, "It was the design of the legislature to furnish the necessary sustenance for such household for one year."

I find authority for this proposition in a long line of Massachusetts cases, where the statutes, since 1783, had provided for widows' allowances, and declared that such provisions and other articles as were necessary for the reasonable sustenance of the family of the deceased for 40 days after his death should not be taken as assets. In Fellows v. Smith, 130 Mass. 376, the widow was allowed $293, the court saying:

"It would be a narrow construction which limited its [the statute's] application to the consumption of such provisions and fuel as happened to be in the house when the death occurred."

And in Dale v. Bank, 155 Mass. 141, 29 N. E. 371, the widow was allowed $500. The court said (page 144, 155 Mass., and page 372, 29 N. E.):

"The purpose of an allowance is to provide for the necessities of the widow and minor children for a short time, until they have an opportunity to adjust themselves to their new situation."

The evident object of the dower quarantine statute and of the section of the Code was to provide in all cases a reasonable support for a short time for the widow and children dependent upon a husband and father, and left without means of support other than his estate. This finds strong illustration where such a man dies intestate. Shall these helpless people be left to the cold charity of relatives or of the world at large? We think these provisions in-

dicate the intention of the legislature to remedy a defect of the common law, and to make reasonable provision for such a contingency; and, if authority for this cannot be found in the strict use of the words of the statute, they must be liberally construed, so as to effectuate the beneficial purpose of the statute. It is estimated that more than three-fifths of the population of this state reside in incorporated cities. It is not of common knowledge, at least, that sheep, cows, and swine, with necessary food for 60 days, are usually owned by any class of residents in such cities. It is not within ordinary rules that peculiar privileges should be granted by legislation of this character to dwellers in the country, more than to dwellers in cities; and, while this is not conclusive reasoning by which we may interpret the statute, it may be used to assist us in arriving at the conclusion that the legislature intended to afford to all widows and minor children left unprovided for by the death of the husband and father an immediate means of support for a short interval succeeding the death. So that, when the legislature uses the words "necessary provisions," I do not hesitate to construe them liberally, to effectuate the remedial purpose of the statute, in order that, if the estate has not the specific articles enumerated in subdivision 3 of the section, an allowance equivalent to the value of such articles may be made for that purpose.

The decree must be affirmed.

Order of surrogate affirmed, with costs. All concur in result.