(Surrogate's Court, Chautauqua County. January, 1904.)

1. ADMINISTRATION—ALLOWANCE TO SURVIVING HUSBAND.

Where none of the articles enumerated in Code Civ. Proc. § 2713, subd. 3, as exempt from inventory, were in existence at the death of petitioner's wife, his application for an allowance in money of the value of such articles will be denied.

In the matter of the estate of Susan Keough, deceased. Application of husband to require executor to set apart for his benefit money in lieu of articles exempted under Code Civ. Proc. § 2713, subd. 3.

T. J. Cummings, for petitioner.
Reed & Snow, for executor.

WOODBURY, S. The deceased testatrix left, her surviving, a husband, the petitioner, and no minor children. The inventory and appraisal returned by the executor and filed October 27, 1903, shows that none of the articles enumerated in subdivision 3, § 2713, of the Code of Civil Procedure, were in existence at the time of the death of the testatrix, and the petitioner asks that the money value of said articles be set apart to him in lieu thereof. The property of the estate, after setting apart to the husband $150, under subdivision 5 of this section, consists of $936.95, cash in bank, and a few articles of personal property, valued by the appraisers at $5.

The sole question presented in this case is whether the petitioner is entitled to have the money value of the articles enumerated in subdivision 3 of this section substituted in their place. There are two lines of decisions bearing upon this question—each, in reasoning and principle, diametrically opposed to the other.

The case of Matter of Williams, 31 App. Div. 617, 52 N. Y. Supp. 700, affirmed an order of Surrogate Abbott, of Kings county, allowing the widow $200 out of the estate of the deceased husband for her sustenance, in lieu of "necessary provisions and fuel." Goodrich, P. J., writing the opinion, after conceding that the allowance did not fall within the strict letter of the statute, and after discussing the object sought to be accomplished thereby, and that it should receive a liberal

interpretation to effectuate such purpose, says (page 621, 31 App. Div., and page 703, 52 N. Y. Supp.):

"So that, when the Legislature uses the words 'necessary provisions,' I do not hesitate to construe them liberally to effectuate the remedial purpose of the statute, in order that, if the estate has not the specific articles enumerated in subdivision 3 of the section, an allowance equivalent to the value of such articles may be made for such purposes."

In the case of Matter of Hembury, 37 Misc. Rep. 454, 75 N. Y. Supp. 933, the appraisers had allowed $200 under subdivision 3, $150 under subdivision 4, and $100 under subdivision 5, of this section, as a cash equivalent of the articles under those various subdivisions which were lacking. Upon the accounting of the executor, objection was made to the $150 allowed under subdivision 4. Church, S., overruling the objection and upholding the allowance, citing the Williams Case, says (page 454, 37 Misc. Rep., and page 934, 75 N. Y. Supp.):

"The object of this statute was to give a special relief to a widow, and is entitled to a liberal construction; and, where the deceased did not leave the specific articles referred to in the statute, then the widow should be entitled to an equivalent in cash."

In the case of Matter of Hulse, 41 Misc. Rep. 307, 84 N. Y. Supp. 220, $150 had been set apart to the widow under subdivision 5 of this section; and, upon the accounting, application was made by the administratrix of the deceased widow for the cash equivalent of the articles enumerated in subdivisions 1, 2, 3, and 4 of the section. Three hundred dollars was allowed. The case arose in Suffolk county. Petty, S., in disposing of the case, says (page 307, 41 Misc. Rep., and page 220, 84 N. Y. Supp.):

"While there is no statutory warrant for an allowance when the articles do not exist, the policy of the law is to be humane, and even generous, toward widows, and to grant them allowances equal to the value of such articles. Matter of Williams, 31 App. Div. 617 [52 N. Y. Supp. 700]; Matter of Hembury's Estate, 37 Misc. Rep. 454 [75 N. Y. Supp. 933]. The object is to place the widow in the same position as if the articles were left by the husband. Consequently the right to an allowance may be said to be vested, and therefore pass to the administratrix of the widow, as would the title to the articles themselves."

These cases all arose in the Second Department. The sole question presented in the Williams Case was whether the widow was entitled to the allowance made by the surrogate for her sustenance in lieu of "necessary provisions and fuel," and, inasmuch as the other members of the court concurred simply in the result, the case cannot be regarded as an authority for holding that the money equivalent can be substituted for other articles enumerated in subdivisions 1, 2, 3, and 4 of said section, except by analogy. The learned surrogates in these two cases followed the decision of the learned Appellate Division in the Williams Case, and have gone very much further by extending the doctrine of substitution to all of the articles of property enumerated in the section.

On the other hand, in the case of Baucus v. Stover, 24 Hun, 109, the General Term in the Third Department, in January, 1881, reversed an order of the surrogate of Washington county allowing to a widow the money equivalent of 10 sheep, with their fleeces, and 2 swine. Bockes, J., writing the prevailing opinion, which was concurred in by

the other members of the court, as respects this question, says (page 114):

"We are of the opinion that these allowances to the widow were improperly made. The testator had no sheep or swine at the time of his death from which such set-off then could be made. The statute contemplates such an ownership and possession of this property in the deceased, or his personal representatives, at the time of making up the inventory, as will permit their delivery to the widow at least potentially. Here the testator had but a half interest in these animals. They could not then be delivered over to the widow, even potentially, and therefore could not be set off to her."

In the case of Matter of Perry's Estate, 38 Misc. Rep. 167, 77 N. Y. Supp. 271, the question was squarely presented whether the widow should be allowed the money equivalent of the articles enumerated in subdivisions 1, 3, and 4 of this section, in a case where such articles were not owned by the husband at the time of death. The learned county judge and surrogate of Allegany county declined to follow the decision of the Appellate Division in the Williams Case, and of the surrogate of Kings county in the Hembury Case, and, in a well-considered opinion, held that unless the husband owned those articles at the time of his death the widow would get nothing under these subdivisions.

I am not aware of any reported judicial decision in this state, prior to the decision of the Appellate Division in the Williams Case, which holds that the money equivalent of the articles enumerated in subdivisions 1, 2, 3, and 4 of this section can be substituted in the place of those articles, or any of them, in cases where such articles were not owned by the deceased at the time of death. The general trend of judicial opinion for more than half a century has been that the statute did not authorize such substitution, and the practice has followed such opinion. The effect of this decision is to open for further judicial consideration a question which for many years has, by common as well as judicial opinion, been regarded as settled. The question presented may therefore be treated as an open one.

The right to exemptions rests upon legislative enactment, and, to determine this right, resort must be had to the statute conferring it. It must be conceded that the right to the money equivalent of the articles enumerated in the first four subdivisions of this section is not to be found in the plain, literal reading of the statute, and this is conceded both in the Williams and Hembury Cases. It is clearly apparent that the statute under consideration is remedial in its character, and was primarily intended to afford some measure of relief to widows and minor children immediately following the decease of the husband and father, and, such being its purpose, should receive a liberal construction to effectuate the purpose intended, so far as any departure from its literal reading can be allowed.

In the case of People ex rel. Savings Bank v. Butler, 147 N. Y. 164–167, 41 N. E. 416, it was said that:

"The cardinal rule in the interpretation of statutes is to arrive at and give effect to the intention of the legislative body, which enacted them. This intention is primarily to be deduced from the language used in the statute itself, and it has been said that where such language is clear and unambiguous there is no room for construction, and that effect must be given to its plain and obvious meaning."

The court in the case of Burch v. Newbury, 10 N. Y. 374–390, lays down the rule as follows:

"It is well settled that in construing a statute the intention of the Legislature is a fit and proper subject of inquiry. That intention, however, is to be collected from the act itself, and other acts in pari materia."

While I am of the opinion that the legislative intent and meaning of this statute is sufficiently clear from its own context, strong evidence of which is found in the fact of the long-settled practice under it without more litigation arising therefrom, yet, keeping in mind these canons of interpretation, it may be both instructive and interesting to look into the history, objects, and policy of this legislation, for the purpose of more clearly arriving at the intention of the Legislature in its enactment.

Prior to 1824 the policy of exempting certain property from execution, when held by a householder, had been inaugurated in this state. By chapter 227, p. 231, of the Laws of 1815, the Legislature enacted:

"That all sheep to the number of ten, together with the fleeces and the cloth manufactured from the same, one cow, two swine, and the pork of the same, all necessary wearing apparel and bedding, necessary cooking utensils, one table, six chairs, six knives and forks, six plates, six tea-cups and saucers, owned by any person being a householder, shall be exempted from execution, and distress for rent, any law to the contrary notwithstanding."

And by chapter 177, p. 195, of the Laws of 1816, the Legislature further enacted:

"That from and after the first day of May next, no spinning wheels, weaving looms or stoves, placed or put up for use, and kept for use, in any dwelling house, shall be levied upon, taken or sold by virtue of any execution nor distrained for rent within this state."

The statute of 1815 was the subject of judicial consideration in the case of Woodward v. Murray, 18 Johns. 400, decided in October, 1820; and the court in the course of the discussion said in reference thereto that "it was designed as a protection for poor and destitute families."

In the case of Kneettle v. Newcomb, 22 N. Y. 249, 78 Am. Dec. 186, the court having under consideration the statute then in force, relating to exemptions from execution, which was a re-enactment and enlargement of the statutes of 1815 and 1816, Judge Denio quotes the language of Justice Platt in Woodward v. Murray, and adds:

"These exemption laws apply only to householders who have families for which they provide. It is a fair inference from this feature that one object of the Legislature was to promote the comfort of families, and to protect them against the improvidence of their head."

And in the case of Wilcox v. Hawley, 31 N. Y. 648, the court said, "The object and intent of these enactments by the Legislature were correctly stated in the opinion in Kneettle v. Newcomb, 22 N. Y. 249 [78 Am. Dec. 186]," and proceeded to state the doctrine laid down in that case above quoted.

It was not, however, until 1824, that the Legislature made provisions for the benefit of the widow and minor children out of the estate of the deceased husband and father, when, by chapter 44, p. 32, of the laws of that year, an act was passed, entitled "An act for the relief of widows and orphans," which provided:

"I. Be it enacted by the people of the state of New York, represented in Senate and Assembly, that hereafter whenever a man having a family shall

die, leaving a widow and a minor child or children, him surviving, and also leaving all or any of the articles which are now exempted, by any statute of this state, from seizure, either on execution or as a distress for rent, that the articles so exempted in the lifetime of such deceased husband, excepting arms and accoutrements, shall continue to be exempted from execution or distress for rent as well after as before the death of such deceased husband, and in like manner all family pictures and books, not exceeding in value fifty dollars, which were kept and used as part of the family library before the decease of such husband, and shall after such decease be exempt from execution or distress for rent, and that in each and every inventory or inventories hereafter to be made, of the personal estate of such deceased husband, by any administrator or administrators, executor or executors of such deceased husband, it shall be the duty of the said administrator or administrators, executor or executors to set forth and specify the articles so as aforesaid exempted, distinguished in such inventory or inventories that the same are by law exempted as aforesaid.

"II. And be it further enacted, that the said articles so as aforesaid exempted, shall not be taken or deemed assets in the hands of such personal representatives of such deceased husband, but the same shall be and remain in the hands and possession of such widow, during all the time she shall continue to live with, provide for, and support such minor child or children; and when such widow shall not continue to live with, provide for, and support such minor child or children, the said articles exempted as aforesaid shall become the property of such child or children."

It was by this enactment that the Legislature inaugurated the policy of extending to the dependent members of the family of a deceased husband or father some measure of protection and relief, by exempting from execution and setting apart for their immediate use and benefit certain of the more necessary articles of property. It is apparent from this statute that the Legislature intended that the same protection and relief which was then afforded to the head of the household and his family in his lifetime should be extended to his widow and minor children after his death.

From this origin and beginning, through a series of amendments and additions, have grown the present statutes upon the subject of exemptions for the benefit of widows and minor children, upon the one hand, and from executions against judgment debtors, upon the other. An examination of the various enactments upon this subject will disclose that, while the policy of referring to the exempted articles enumerated in the one statute for the purpose of disclosing what were exempted under the other did not long continue, the statutes upon the two subjects from thenceforth grew up together; each embracing and exempting the same articles, so far as warranted by the circumstances, and carrying out the same general policy—the protection of the family. The Revised Statutes adopted in 1827–28 separated these articles, and carried them into separate sections—section 22, tit. 5, c. 6, pt. 3, of the First Revised Statutes, enumerating the articles exempted from execution, and section 9, tit. 3, c. 6, pt. 2 of the First Revised Statutes, specifying the articles to be set apart for the benefit of the widow and minor children; and this separation has continued down to the present time, when we find the articles and property to be set apart for the benefit of the widow and minor children enumerated in section 2713 of the Code of Civil Procedure, and those exempted from execution chiefly enumerated in sections 1390 and 1391 of the Code. It is interesting to note that under these provisions of the Revised Statutes no articles of provision or fuel were to be set apart for the widow and

minor children, aside from sheep, cow, and swine, whereas, under the statute relating to executions, pork, beef, fish, flour, and vegetables actually provided for family use, and necessary fuel for use of the family for 60 days, were exempted. Thus no provision was made for the support of the widow and minor children out of the estate, except the right of reasonable sustenance given to the widow for 40 days, in connection with her right of quarantine for a like period, under 1 Rev. St. p. 742, pt. 2, c. 1, tit. 4, § 17. This right was personal to the widow, and did not extend to the maintenance of children. Johnson v. Corbett, 11 Paige, 265–276. These conditions continued until 1842, when the Legislature, by chapter 157, p. 193, of the laws of that year, extended the provisions for the benefit of widows and minor children, by requiring that there should be inventoried and set apart for their use, in the manner prescribed by law for the making of inventories of the estates of deceased persons, "necessary household furniture, provisions or other personal property, in the discretion of said appraisers to the value of not exceeding $150, in addition to the articles of personal property now exempted from appraisal by said section"; but even under this statute our courts have seemingly been inclined to hold that it is left discretionary with the appraisers as to whether provisions, household furniture, or other personal property should be set apart. Sheldon v. Bliss, 8 N. Y. 31–34; Matter of Bidgood, 36 Misc. Rep. 516, 73 N. Y. Supp. 1061. This provision was re-enacted by section 2, c. 173, Laws 1890, and is the same provision of law for which subdivision 5 of section 2713 of the Code was substituted in almost the identical language.

By chapter 470, p. 612, of the Laws of 1874, section 9, tit. 3, c. 6, pt. 2, of the Revised Statutes, was amended and re-enacted by adding to the list of articles to be set apart for the benefit of widows and minor children, under subdivision 1, "One knitting machine, one sewing machine;" under subdivision 3, "Necessary food for such swine, sheep, or cow, for sixty days, and all necessary provisions and fuel for such widow or child or children for sixty days after the death of such deceased persons;" under subdivision 4, by increasing the number of knives, forks, teacups and saucers, and spoons from 6 to 12, and by adding "other household furniture not exceeding one hundred and fifty dollars in value"; and this statute is now embodied in, and forms a part of, section 2713 of the Code of Civil Procedure, in almost the same identical language. By chapter 782, p. 1926, of the Laws of 1867, the benefits secured to the widow and minor children out of the estate of the deceased husband and father were extended so as to give the minor children the same benefits out of the estate of the deceased widow; and by chapter 630, p. 841, of the Laws of 1887, this statute was so amended that the surviving husband and minor children of a deceased wife and mother should be entitled to have set apart to them, with the same effect, the same articles of property out of her estate as would have been set apart to the widow and minor children out of the estate of the husband and father, had he predeceased them.

These various provisions of the statutes, as finally amended, relating to benefits secured to the widow, husband, and minor children, where death has intervened, were consolidated and re-enacted into section

2713 of the Code of Civil Procedure, as it now stands, by chapter 686, p. 1694, Laws 1893.

The petitioner in this case, as the surviving husband of the deceased, is entitled, under this section, to have set apart for his benefit the same articles and personal property, with the same effect, as the deceased would have been entitled to, had she survived him, for it expressly provides:

"If a married woman die, leaving surviving her a husband, or a minor child or children, the same articles and personal property shall be set apart by the appraisers with the same effect, for the benefit of such husband or minor child or children."

These statutes—the one relating to exemptions from execution, and the other to the articles to be set apart for the benefit of the surviving husband or wife and minor children—must be regarded as acts in pari materia. They have for their accomplishment the same purpose—the protection and relief of the family.

As already stated, the statute under consideration is remedial in its character, and should receive a liberal construction to effectuate the purpose intended; and the courts, in construing the statute relating to exemptions from execution, have also held it to be remedial, and laid down the same rule of construction. Carpenter v. Herrington, 25 Wend. 370, 37 Am. Dec. 239; Browne v. Witt, 19 Wend. 475, 476; Griffin v. Sutherland, 14 Barb. 456–458. Yet, to enable a person to successfully maintain his right to exemptions under that statute, I regard the rule as well settled that he must be able to show that his right thereto falls clearly within the terms of the statute. Van Sickler v. Jacobs, 14 Johns. 434; Griffin v. Sutherland, 14 Barb. 456; Dains v. Prosser, 32 Barb. 290; Krofft v. Collins, 25 Hun, 190. In construing that statute the court held in the case of Salsbury v. Parsons, 36 Hun, 12–17, that wheat did not come within the meaning of the term "flour," as used in the statute; and again, in the case of Lashaway v. Tucker, 61 Hun, 6, 15 N. Y. Supp. 490, it was held that meal was embraced within the term "flour," as used in the statute, only by a divided court, notwithstanding the fact that the common definition of the word "flour" is the finely ground meal of wheat or any other grain; thus showing that the courts have not deemed it advisable or proper, in construing that statute, to go further than its plain language called for, or to enter the realms of speculation as to the legislative intent by reason of the policy of its enactment. So far as I am able to discover, it has never been claimed, under the statute relating to exemptions from execution, that, if any of the exempted articles were lacking, the money value thereof could be substituted and exempted from execution; and such a claim made at this late day would, I apprehend, meet with scant favor. Yet we find such expressions as "necessary food for those animals," and "necessary fuel, oil and candles for the use of the family for sixty days," used in that statute, similar to the expressions used in the statute under consideration, and similar to the expression "necessary provisions," etc., therein used, under which it was held in the Williams Case that the money equivalent should be substituted.

Now, if these principles and rules of law relating to exemptions from execution are applicable to the statute under consideration—and I am

of the opinion that they are—it follows that the money equivalent of the articles enumerated in the first four subdivisions of this section, not owned by the deceased at the time of his death, should not be substituted in their stead. Taking into account the history of this legislation, it is difficult to see upon what theory such substitution can be allowed under this section, and denied under the one relating to executions, because the solicitude shown by the Legislature, from an early date, for the judgment debtor and his family in his lifetime, as regards the exemption from execution of provisions necessary for their support, is in striking contrast with the failure to provide in any manner, as a matter of right, for the setting apart of necessary provisions for the use of the widow and minor children, until 1874. If the right of substitution exists at all, it would exist under that statute as clearly as under the one now being considered, if the policy of the Legislature, as evidenced by the statutes enacted upon the two subjects, is to have a controlling influence in determining the legislative intention.

Again, it seems to my mind quite probable that when the Legislature, in 1842, provided for the setting apart of "necessary household furniture, provisions, or other personal property," it had in mind this omission in the previous law to provide for the temporary support of the widow and minor children immediately following the death of the husband and father, and took that means of supplying such omission. While the statute seems to have vested a discretionary power in the appraisers as to the kind of property to be set apart, yet the honesty of purpose and good sense of the appraisers would ordinarily meet the emergency of the given case, and afford any needed temporary relief, and for any abuse of such discretionary power the court would readily afford relief. It is a noteworthy fact that in the practical application of this statute the wishes of the widow as to the property to be set apart thereunder are usually respected by the appraisers, and as a general rule this practice best serves the purposes of its enactment.

I am also of the opinion that had the Legislature intended that the money equivalent should be substituted for the articles enumerated in the first four subdivisions of this section, or any of them, in case any of such articles were lacking, it would have used more apt language to express such intention, as was done with respect to the provisions of subdivision 5 of the same section. This position finds strong support in the fact that when chapter 470, p. 612, of the Laws of 1874, which amended and re-enacted the first four subdivisions of the Revised Statutes for which the first four subdivisions of section 2713 of the Code were substituted in 1893, was enacted, subdivision 5 of this section was existing law, embraced in chapter 157, p. 193, of the Laws of 1842; and the same conditions existed in 1893, when all these provisions were collected, codified, and re-enacted into section 2713 as it now exists; and if, at the time of these enactments, and especially at the time of the codification and re-enactment in 1893, when all these various subdivisions were collectively under consideration, the Legislature had intended to allow the money equivalent of any of these articles, it would have employed language which would more clearly and explicitly convey such intention, especially as the long-settled practice had been contrary to such doctrine.

Again, in the case of Baucus v. Stover, 24 Hun, 109–114, the court, in 1881, had construed this statute and held, "The statute contemplates such an ownership and possession of this property in the deceased, or his personal representatives, at the time of making up the inventory, as will permit their delivery to the widow at least potentially," and upon such construction had denied the money equivalent of 10 sheep and 2 swine to the widow. This construction remained unchallenged down to 1893, when the Legislature re-enacted chapter 470, p. 612, of the Laws of 1874, under which the question arose, into the present section 2713 of the Code, in almost the same identical language, and such re-enactment is to be deemed an adoption of such construction; and the same construction should now be given to the present law. People ex rel. Outwater v. Green, 56 N. Y. 466–475; Pulitzer v. City of New York, 48 App. Div. 6–10, 62 N. Y. Supp. 587; Commonwealth v. Hartnett, 3 Gray, 450. The court in the latter case, in discussing this proposition and rule, said:

"When the same Legislature in a later statute use the terms of an earlier one which has received a judicial construction, that construction is to be given to the later statute. And this is manifestly right. For, if it were intended to exclude any known construction of a previous statute, the legal presumption is that its terms would be so changed as to effect that intention."

Furthermore, I regard the language of the statute itself sufficiently clear and explicit to negative the proposition that the money equivalent can be substituted for articles not in existence at the time of death. It is dealing with articles which have an existence, and which would pass to the executors or administrators as assets, were it not for the statute. It provides that "if a man having a family die, leaving a widow or minor child or children, the following articles shall not be deemed assets," etc. It simply excepts and takes out of the body of assets enumerated in section 2712 of the Code certain enumerated articles, and passes them over to the widow, widower, or minor children. It simply withdraws such articles from the list of property subject to administration and distribution. How can a thing which has no existence be said to be excepted, taken away, or withdrawn from anything? It would be just as consistent, in principle, to hold that, where any of these articles are not in existence, they should be purchased, put into the estate, and then set apart, as it would be to hold that their cash equivalent should be substituted.

I am satisfied that the true interpretation to be placed upon the language employed with respect to the first four subdivisions of this section is that such of the articles enumerated therein as were in existence at the time of decedent's death shall not be deemed assets of the estate, but shall be set apart for the benefit of the persons named therein. It seems clear to me that, in the enactment of the provisions contained in these four subdivisions, the Legislature, taking into consideration the circumstances existing at the time of their enactment, intended that the articles and property enumerated, which had been accumulated and were in use by the family, and which seemed the most essential and necessary for their comfort and welfare, should be secured and immediately passed over to the surviving head and dependent members thereof, to enable them to at once take up and con-

tinue their duties in life; and I am unable to find any evidence of any intent to provide relief, aside from the setting apart of such articles and property as had been so accumulated and gotten together by the family itself, by substituting the money equivalent for any of those articles which were lacking. This interpretation renders capable the delivery of the articles set apart, which is held to be essential in the case of Baucus v. Stover, 24 Hun, 109, and is the only interpretation which in all cases will enable the person or persons entitled thereto to enter into the immediate possession and enjoyment thereof, which is held in the case of Crawford v. Nassoy, 173 N. Y. 163, 65 N. E. 962, to be a right vesting immediately at death. The court in that case said (page 164, 173 N. Y., and page 962, 65 N. E.):

"On the death of the husband the legal title to the property thus reserved for her, and specified in the statute, vests in the widow. The statute declares that it shall not be deemed assets or appraised, though it must be included in the inventory. The object of including it in the inventory was to identify it as part of the property left by the deceased. An administrator has no title, possession, or right to possession of property which the statute declares is not assets subject to appraisal, and belongs absolutely to the widow."

And again (page 166, 173 N. Y., and page 963, 65 N. E.):

"If the duty of the administrator to inventory the property confers some right to possession for that purpose, such right cannot survive the taking of the inventory."

It also avoids the complications in its application alluded to in the Perry Case, and the absurdities which in many cases would arise in its application to the case of a surviving husband.

Upon the whole view of this question, I am led to the conclusion, and accordingly hold, that the money equivalent cannot be allowed as a substitute for any of the articles enumerated in the first four subdivisions of this section, where such articles did not exist at the time of death. I am unable to discover any sufficient reason for creating an exception to this holding with respect to necessary provisions and fuel. While it may with propriety be urged that stronger reasons exist why the money equivalent should be allowed in the place of these articles, yet its position in the statute and the history of this legislation lead me to the conclusion that this provision must stand upon the same footing and receive the same construction as other provisions in the class which it occupies. The remedy for any injustice which may exist in this respect rests with the Legislature, and courts should not encroach upon the domain of legislation for the purpose of correcting it. It follows that the application should be denied, and an order may enter accordingly, without costs.

Application denied.