In the Matter of the Estate of MAX GOLDMAN, Deceased.

Surrogate's Court, Kings County, February 26, 1936.

*Herman M. Wachtel*, for Gussie Zimbler and another, as executors.

*William Klein*, for Esther Goldman, widow, objectant to account.

WINGATE, S.   A decree for the judicial settlement of the accounts of the executors has been submitted.   The widow objects thereto on the ground that no provision is therein made for the payment to her of the sum of $300 as specified in subdivision 4 of section 200 of the Surrogate's Court Act.

The reply of the executors is twofold, *first*, that by reason of her failure to make prior claim for this sum, she " is now estopped from raising said objection; " and *second*, that since it has been demonstrated in a proceeding relating to the widow's right to elect against the will under section 18 of the Decedent Estate Law, that the decedent had abandoned the widow, he had, by his own wrongful act, succeeded in divesting himself of a family, with the result that the widow cannot bring herself within the terms of this statute.

An analysis of the purported bases of these two defenses discloses their somewhat startling incongruity.   In one breath the fiduciaries appeal to the chancery powers of the court to validate a purely equitable supposed defense, and in the next set up the egregious wrong of the decedent as the sole basis for a defeat by a court of equitable jurisdiction of the usual right of the widow.

That the first position is wholly untenable is obvious from the very statement of the basis asserted.   Under the express language of the enactment, the items of property specified in the statute are not assets of the estate.   (*Matter of Hallenbeck*, 195 N. Y. 143, 145; *Crawford* v. *Nassoy*, 173 id. 163, 166; *Sheldon* v. *Bliss*, 8 id. 31, 34; *Matter of Shonts*, 191 App. Div. 427, 432; revd. on other grounds, 229 N. Y. 374; *Matter of Barthel*, 111 Misc. 727; affd., 192 App. Div. 926; *Matter of McNamara*, 138 Misc. 526, 533.)   In this situation, if it be granted that the present widow is within the contemplation of the statute, the property in question, not being that of the estate, inevitably belongs to her.   It is a somewhat novel position to assert that a delay for a period less than that prescribed by pertinent law in claiming one's own from a gratuitous bailee thereof will work a forfeiture of ownership. Indeed it has been held that such claim may be asserted at any

time prior to the expiration of the usual six-year period of limitation. (*Matter of Reynolds*, 134 Misc. 564, 565.)

In any event, an assertion of an estoppel is merely an allegation of a conclusion. " Mere indulgence  *  *  * without demonstration of a change of position rightfully accomplished  *  *  * in reliance thereon has never resulted in the creation of an estoppel." (*Matter of Ayvazian*, 153 Misc. 467, 475, and authorities cited.) None of the facts essential· to the creation of an estoppel are here alleged; wherefore, on basic principles, the pleading of a mere legal conclusion is valueless for any purpose. (*Hyman* v. *Levin*, 243 App. Div. 6; *Matter of Brady*, 147 Misc. 613, 615; *Matter of Schrier*, Id. 539, 540; *Matter of Zaiss*, Id. 616, 617.) Finally, section 267 of the Surrogate's Court Act furnishes direct authority for the procedure here adopted by the widow. (*Matter of Belcher*, 129 Misc. 218, 221, 222.)

The second objection to the widow's claim is predicated upon the opening words of the statute, which inferentially conditions the right to the specified property to those cases in which " a person having a family " dies. The contention of the executors is, in effect, that this decedent had no family by reason of the fact that by his own wrongful act of desertion and abandonment, he elected to abolish this adjunct to his existence. No authority for this position has been cited and the court is unfamiliar with any. As early as 1852, the Court of Appeals held that a man died leaving " a family " within the contemplation of the forerunner of the present statute, where only a wife without minor children survived him (*Kain* v. *Fisher*, 6 N. Y. 597, 598), and the same determination has been made in *Matter of Shedd* (60 Hun, 367; affd. on opinion below, 133 N. Y. 601) and in *Matter of Osborn* (220 id. 595).

It may be surmised that the misapprehension of the executors in this regard is caused by a failure to appreciate the reasons underlying the results in such cases as *Matter of Barnes* (149 Misc. 149); *Matter of Sitkin* (151 id. 448), and *Matter of Brown* (153 id. 282), all of which denied the right of a surviving husband to receive the exemptions specified in section 200 of the Surrogate's Court Act where it was demonstrated that he had abandoned and failed to support the wife against whose executors such claim was made. However phrased, the ultimate basis of these decisions is the age-old principle that he who seeks the aid of a court of equity must come before the bar of justice with clean hands. Such an individual has done his utmost to destroy the " family," upon the continued existence of which his rights depend, and will not be heard to assert that his efforts at sabotage have been ineffective, where it would result in his enrichment at the expense of the estate of the one whom he has

so grievously wronged. Whereas it may readily be admitted, as is pointed out in *Matter of Zolessi* (154 Misc. 313, 315), that the Legislature has not expressly excluded the wrongdoer in this connection, as has been done in respect to the right to elect against a will (Dec. Est. Law, § 18, subds. 4, 5), to share in intestacy (Dec. Est. Law, § 87, subds. c, d) and to participate in a distribution of damages for wrongful death (Dec. Est. Law, § 133, subds. 2, 3), yet the policy of the State is clearly demonstrated by these enactments covering similar situations, and since the theory underlying all parts of section 200 is that the particular allowances made are to enable the survivor to continue the family unit (*Matter of Williams*, 31 App. Div. 617, 621; *Matter of Benjamin*, 150 Misc. 857, 858; *Matter of Levine*, 157 id. 454, 455), one who has done his utmost to destroy this semi-entity is estopped to allege the failure of his efforts. The family unit still remains intact at the domicile of the abandoned spouse, it is still the family of the defaulter, and his obligations in respect to it are still recognized and enforced by law, but until, by repentance and reparation, he has re-established himself as a member in good standing therein, he may not claim for himself any of the benefits flowing therefrom.

The objections of the widow to the account in this regard are accordingly sustained.

Submit amended decree on notice.